# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 02-4348

ARDIAN HASANAJ,

*Petitioner*,

v.

JOHN D. ASHCROFT, United States
Attorney General,

*Respondent.*

———————

Petition for Review of an Order of
the Board of Immigration Appeals.
No. A76-294-776

———————

ARGUED JANUARY 13, 2004—DECIDED SEPTEMBER 27, 2004

———————

Before BAUER, MANION, and ROVNER, *Circuit Judges.*

BAUER, *Circuit Judge.* This is an immigration case in which the petitioner, Ardian Hasanaj, seeks review of a final order of the Board of Immigration Appeals ("BIA") affirming a removal order issued in Immigration Court. Hasanaj is a 31-year-old native of Albania, who entered the United States in April 1997 at one of Chicago's airports. At the time he presented a Swiss passport which had been purchased in Albania. A Notice to Appear dated May 5, 1997, indicated that Hasanaj was subject to removal on the grounds that he

sought to enter the United States by fraud or willful misrepresentation of a material fact, and that he was not in possession of a valid unexpired passport or a valid visa or any other valid entry document. At the hearing, petitioner conceded removability and applied for asylum and withholding of removal.

In his asylum application, Hasanaj stated that he left Albania and went to Yugoslavia from 1991 to 1994 to escape persecution. He returned to Albania after his asylum request was denied and joined the Albanian Democratic Party in 1994. He attended meetings and recruited members in his hometown, Han I Hotit, Shkoder Province. According to Hasanaj, members of his family were active in the Democratic Party and that his cousin was the party leader in Han I Hotit. In early 1997, the Democratic Party and the Socialist Party were at odds. Beginning in February of 1997, the disagreements between the parties grew violent. Hasanaj's cousin, the leader of the party, was shot by a group of armed men who identified themselves as Socialists. According to Hasanaj, two days later, five, armed, masked men, claiming to be Socialists, stopped his car and threatened to kill him if they saw him again. Shortly after, his car was set on fire. Hasanaj left a few days later for the United States.

At his removal hearing, Hasanaj testified that he left Albania because of his problems with the Socialist Party and that he would be jailed, hurt or killed by the Socialist Party if he returned to Albania. His parents, sister and brother are living in Albania and they have not experienced any violence or threat of violence since 1998.

The immigration judge ("IJ") found Hasanaj to be removable and denied his applications for asylum and withholding of deportation. The BIA dismissed the appeal without a separate opinion. This petition for review followed.

*Discussion*

Because the BIA affirmed the IJ's opinion, we base our review on the IJ's analysis. *Balogun v. Ashcroft*, 2004 WL 1469402, *5 (7th Cir. 2004). We review the IJ's denial of Hasanaj's petition for asylum and withholding of removal under the highly deferential substantial evidence test. *Id.* Under the substantial evidence test, "we must uphold the IJ's findings if they are supported by reasonable, substantial, and probative evidence on the record considered as a whole; we may reverse the IJ's determinations only if we determine that the evidence *compels* a different result." *Id.*; *see also* 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.").

*Asylum*

The Attorney General has discretion to grant asylum to an alien who is a "refugee," that is, an alien who is unable or unwilling to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1101(a)(42)(A), 1158(a). In this case, Hasanaj claims he will be persecuted because of his political opinion. The burden of proof is on Hasanaj to show that he is a "refugee" and is eligible for asylum. *See* 8 C.F.R. § 208.13(a).

Hasanaj asserts that the IJ and the BIA erred in denying his request for asylum. The IJ's denial of asylum rests on the conclusion that the evidence was not sufficient to establish past persecution or a well-founded fear of future persecution. Hasanaj's claim of past persecution was based on one incident; he was threatened at gunpoint by a gang of socialists who then set his car on fire.

Although threatened, he was not physically harmed. *See Tamas-Mercea v. Reno*, 222 F.3d 417, 424 (7th Cir. 2000)

(defining persecution as "punishment" or "infliction of harm" for political, religious or other illegitimate reasons "that rises above the level of mere harassment"). His claim of past persecution is unfounded. *Id.* (finding no persecution where applicant was not personally harmed); See also *Lwin v. INS*, 144 F.3d 505, 509 (7th Cir. 1998) (finding failure to establish past persecution even though the applicant had been subjected to two interrogations, three home searches, and was forced to sign an agreement to report his son's whereabouts).

Hasanaj claims he has a "well-founded fear" of persecution if he returns to Albania. The "well-founded fear" test has two components: (1) that he has a genuine, subjective fear of persecution, and (2) that his fear is objectively reasonable. *Balogun*, 2004 WL 1469402, at *5. The "subjective fear component turns largely upon the applicant's own testimony and credibility." *Balogun*, 2004 WL 1469402, at *5; quoting *Capric v. Ashcroft*, 355 F.3d 1075, 1085 (7th Cir. 2004). The objective component can be met by presenting specific documents or by persuasive testimony. *Balogun*, 2004 WL 1469402, at *5.

Hasanaj argues that the evidence of the threat to him, the loss of his car, as well as the shooting of his cousin, coupled with political unrest in Albania established a well-founded fear of persecution if he returns. The IJ found that Hasanaj's risk was no greater than that faced by the average Albanian. His reasons are as follows:

> [T]he level of involvement by [Hasanaj] in the Democratic Party was not that great. [Hasanaj] was, in my view, simply an average party member. He did not hold the position of prominence, notwithstanding his contention he followed his brother [sic] around. I don't think the evidence supports that contention that he was more than an average member of that party. The Democratic Party as the documents clearly show, is a broad-based

movement in Albania. There are many people who support that party, particularly in the area from which [Hasanaj] emanates. In addition, I think that [Hasanaj's] case essentially rests upon a unique event. One threat in April 1997 and should be considered in that context. The conditions as described in the reports at that time, consisted of widespread lawlessness in Albania, a breakdown of the rule of law because of the widespread availability of arms. The threats that [Hasanaj] experienced were, I think, the problems which many people did in Albania at the time.

Br. of Petitioner at App. 12. The IJ also pointed to Hasanaj's testimony that his brother, who had been in Italy, had returned and is working in Albania. His testimony indicated that his parents and his brother were still living in Han I Hotit and remain unharmed. The IJ noted that the State Department's advisory opinion indicated the situation has calmed considerably based on the fact that "a new government was elected in the summer of 1997 and that the elections were recognized by the international community as being fair and comporting with the international standards." *Id.* at 13. The IJ reasoned that there is nothing in Hasanaj's testimony "that indicates that the threat to his family is ongoing or that members of the Socialist Party would be seeking to harm his family because of any of his activities. . . . Consequently, there is little reason to believe that [Hasanaj] would be in danger now in Albania." *Id.* Applying the highly deferential substantial evidence test, we have concluded that the IJ's decision to deny asylum is reasonable and is supported by the evidence on record.

*Withholding of Removal*

In order to establish eligibility for withholding of removal under 8 U.S.C. § 1231(b)(3), an applicant must establish a clear probability of persecution on account of one or more of the five enumerated grounds. If an applicant fails to es-

tablish eligibility for asylum, he or she cannot meet the more stringent standard for withholding of removal. *Balogun*, 2004 WL 1469402, at *13. So the denial of Hasanaj's request for withholding of removal was correct.

*Due Process Violations*

The Petitioner also claims that he was denied his Fifth Amendment due process rights. Aliens are entitled to due process during immigration proceedings. *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987). We review de novo claims of due process violations in removal proceedings. *Kerciku v. INS*, 314 F.3d 913, 917 (7th Cir. 2003).

Hasanaj claims that the IJ (1) improperly questioned him regarding certain aspects of his asylum claim, (2) improperly disallowed him from testifying about current conditions in Albania, and (3) unfairly denied his motion for a continuance.

During Hasanaj's testimony, the IJ questioned him about various aspects of his testimony and his asylum claim. In doing so, the IJ acted well within his "authority to administer oaths, receive evidence, and interrogate, examine, and cross-examine the alien and any witnesses." 8 U.S.C. § 1229a(b)(1). An IJ, "unlike an Article III judge, is not merely the fact finder and adjudicator but also has an obligation to establish the record." *Yang v. McElroy*, 277 F.3d 158, 162 (2nd Cir. 2002); see also *Richardson v. Perales*, 402 U.S. 389, 410 (1971) (holding that an administrative law judge acts as "an examiner charged with developing facts"). As the government noted in oral argument, the fact that an IJ asks questions during the proceedings is helpful to develop the record and is better than a silent bench that says nothing throughout the proceedings and then denies the request for asylum because the petitioner did not provide sufficient evidence.

Hasanaj asserts that the IJ's conduct during questioning amounted to "hectoring, pressuring or abusing the witness . . . abandoning all appearance of impartiality." Br. of Petitioner at 20. From our reading of the questioning, the IJ did not demonstrate impatience, hostility, or a predisposition against Hasanaj's claim. The questions were relevant and based on the testimony or documentary evidence submitted by Hasanaj. For instance, the IJ questioned him about the incident with the masked men that caused him to leave Albania. That line of questioning was to clarify how Hasanaj knew that the masked men were part of the Socialist Party. Br. of Petitioner at App. 42-46. The IJ also questioned the Petitioner about where he lived in Albania and why he never tried to find a safe place to live somewhere else within the country. *Id.* at 47. The IJ asked, "what specific information that you have that would indicate that you would not be safe living in Albania now, either in Skhodar or elsewhere in Albania?" *Id.* at 49. These questions were to develop the record with whatever the Petitioner had to offer for his case. The questions reflect what the IJ still needed to know in order to make a fully informed decision. There are no questions, or group of questions that indicate that this IJ was anything but thorough and fair in his obligation to this Petitioner.

The Petitioner claims that the IJ denied him due process when he barred him from testifying about current conditions in Albania. Br. of Petitioner at 20. That is a misstatement of the facts as we read them in the record of the proceedings. The IJ did not *bar* Hasanaj from testifying about the current conditions in Albania; instead when the Petitioner's attorney began to question him about certain conditions in Albania, the IJ stated that he would give little weight to such testimony as an authoritative historical account. Br. of Petitioner at App. 51-53. After the attorney stated that the testimony would be relevant to the issue of subjective fear, Hasanaj testified about events that occurred in Albania af-

ter his departure from that country. The IJ did not bar any testimony, nor was the IJ wrong in stating that little weight would be given to Petitioner's testimony regarding current conditions in Albania. *Gramatikov v. INS*, 128 F.3d 619, 620 (7th Cir. 1997) (stating that little weight should be given to testimony of an alien who has lived in this country for years and is not an expert on the politics of his native country as to its current political climate). Here, Hasanaj presented evidence in the form of documentation relating to conditions in Albania in 1997 and 1998, including press releases purportedly setting forth the platform and mission of the Democratic Party; reports from Amnesty International, dated March 3, 1997, and March 14, 1997; and newspaper articles from various new agencies and publications. The Petitioner also provided a copy of the State Department's Albania Country Report on Human Rights Practices for 1996. With this volume of evidence and the fact that the Petitioner was not barred from testifying, we find no error in discouraging Hasanaj from giving cumulative testimony about country conditions in Albania.

Hasanaj also argues that the IJ denied him his right to a fair hearing when he denied his request for a continuance. Hasanaj's attorney, Marketa Lindt, entered her appearance on his behalf in July 1997. At a hearing on January 27, 1998, the IJ scheduled the hearing on Hasanaj's asylum request for July 1, 1998, by agreement of the parties. In a motion dated June 10, 1998, Hasanaj requested a continuance because an Albanian interpreter became unexpectedly ill on June 6, 1998, and that Hasanaj was unable to meet with counsel for a scheduled meeting to review the case. The motion also stated that counsel had a speaking engagement at the American Immigration Lawyers Association conference on June 17-21, 1998, and that counsel's ability to reschedule a meeting with Hasanaj was difficult. The IJ denied the motion for a continuance. At the July 1, 1998 hearing, the IJ explained that any continuance would be for

a period of about six months, in light of the immigration court's calendar. The IJ noted that the asylum application was prepared in 1997, that it was filed in 1998, and that counsel had been representing the Petitioner since May 1997. The IJ thought the time to prepare had been sufficient and further noted that both by regulation and government policy, the hearing on an asylum request is to be held within 180 days after filing. The IJ determined that there ought to be another day in the two-month period to meet with the interpreter and that the speaking engagement should not take priority over the hearing. (Also, the speaking engagement was to take place a full week before the scheduled hearing; there was no actual conflict.) We find no error in the IJ's decision to deny the motion for continuance.

In order to establish a denial of the right to due process, Hasanaj must show that he was prejudiced by the IJ's actions. *Wigglesworth v. INS*, 319 F.3d 951, 960 (7th Cir. 2003). Hasanaj has not pointed to any evidence that might establish prejudice. The IJ's questioning of Hasanaj was relevant and appropriate. The Petitioner was not barred from testifying about conditions in Albania subsequent to his departure and he did submit voluminous documentary evidence regarding such conditions. He had full opportunity to present his case even without the continuance. He submitted extensive documentary evidence at the hearing, and his testimony was lucid and credible. The record reveals nothing to suggest that he was prejudiced by any of the IJ's questions, findings, or decisions. His claim of denial of due process is unfounded.

The IJ's and BIA's decisions regarding Hasanaj are AFFIRMED and his petition for review is denied.

A true Copy:

    Teste:

 

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*