**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 23, 2006[*]
Decided August 23, 2006

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

No. 05-3870

| | |
|---|---|
| KOMANG A. PARTHAYASA, <br>     *Petitioner*, | On Petition for Review of an Order of <br> the Board of Immigration Appeals |
| *v.* | No. A 95-557-462 |
| ALBERTO R. GONZALES, Attorney <br> General of the United States, <br>     *Respondent*. | |

**O R D E R**

Komang Parthayasa applied for asylum and withholding of removal on the ground that he suffered persecution in his native Indonesia. Eventually he dropped his asylum claim, and the Immigration Judge then denied withholding of removal after concluding that the single instance of harm Parthayasa suffered was not persecution but, rather, a random act of violence perpetrated by an angry mob during a demonstration. The Board of Immigration Appeals adopted and affirmed the IJ's decision. Parthayasa now petitions for review, arguing that he was denied

---

[*] After examining the briefs and record, we granted the petitioner's motion to waive oral argument. Thus, the petition for review is submitted on the briefs and the record. *See* Fed. R. App. P. 34(f).

due process because, he says, the IJ prejudged his asylum application and threatened to deny him the option of voluntary departure if he pursued it. Parthayasa never raised this contention before the BIA, so we do not have jurisdiction to hear it. We therefore deny the petition.

Parthayasa entered the United States in June 2001 on a four-month work visa and overstayed. He came to the attention of immigration authorities in April 2003 when he complied with a requirement that visitors from designated countries, including Indonesia, register with the Department of Homeland Security. After he registered, DHS placed Parthayasa under removal proceedings. Only then—two years after his visa expired—did he apply for asylum and withholding. He claimed in his application that he was persecuted based on his political opinion and membership in a particular social group when an unknown assailant stabbed him in the chest in April 2000 as he "tried to prevent supporters of presidential candidates from fighting each other."

At Parthayasa's first appearance before the IJ with counsel, the IJ granted his request for a continuance, but then went on to question him without an interpreter. After Parthayasa said he had never been arrested, or charged with a crime, or detained by police in Indonesia, the IJ stated on the record that he was ineligible for relief other than voluntary departure. Before adjourning, the IJ resumed asking Parthayasa why he couldn't go back to Indonesia, but when counsel objected, the IJ abandoned the questioning.

At Parthayasa's next appearance, the IJ announced at the outset that Parthayasa couldn't "even be considered for asylum" because he did not apply within one year of arrival. *See* 8 U.S.C. § 1158(a)(2)(B). The IJ noted his suspicion that Parthayasa brought the asylum claim solely "for purposes of stalling his case," and repeatedly warned that he would be deported if he filed a frivolous claim. Still, the IJ accepted his application and twice explained that he could establish eligibility for asylum at the next hearing if he showed that he qualified for an exception to the filing deadline. *See* 8 U.S.C. § 1158(a)(2)(D). The IJ made similar comments at a third appearance.

When his case finally came up for a hearing in August 2004, Parthayasa stated that he was not asserting any excuse for the untimely filing of his asylum application and that he sought only withholding of removal. After receiving Parthayasa's evidence, the IJ characterized his withholding claim as disingenuous and denied it. The IJ reasoned that Parthayasa had just been "in the wrong place at the wrong time" when he was injured, and that he'd failed to demonstrate that the single instance of harm he suffered was motivated by political opinion or any other protected ground. In a per curiam order, the BIA adopted and affirmed the IJ's determination.

The Immigration and Nationality Act requires an alien to exhaust his administrative remedies before seeking judicial review of a removal order. 8 U.S.C. § 1252(d)(1); *Capric v. Ashcroft*, 355 F.3d 1075, 1087 (7th Cir. 2004). Although due process claims are generally exempt from the exhaustion requirement because the BIA does not have the authority to adjudicate constitutional issues, the requirement applies when the petitioner's claim involves procedural errors that are correctable by the BIA. *Feto v. Gonzales,* 433 F.3d 907, 912 (7th Cir. 2006); *Capric*, 355 F.3d at 1087. Thus, a petitioner waives the right to present a due process argument for the first time in a petition for review if the BIA had the ability to correct the problem by ordering a new hearing had the claim been presented to it. *See Feto,* 433 F.3d at 912; *Awad v. Ashcroft*, 328 F.3d 336, 340 (7th Cir. 2003).

In his brief to the BIA, Parthayasa never made a due process argument, nor did he even suggest that the IJ coerced or threatened him into withdrawing his asylum application. The BIA could have ordered a new hearing if this claim had merit. But because Parthayasa failed to assert the argument before the BIA, we lack jurisdiction to consider it now. Even if this were not the case, Parthayasa conceded that he did not file a timely asylum application or satisfy any exception to the filing deadline; thus, his due process claim would fail because he cannot show that he was prejudiced. *See Capric*, 355 F.3d at 1087–88 (holding that a petitioner must show prejudice to prevail on a due process claim).

We therefore DENY the petition for review.