# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 05-3871

FERDINAND PJETRI,

*Petitioner,*

*v.*

ALBERTO R. GONZALES,

*Respondent.*

On Petition to Review an Order of the
Board of Immigration Appeals.
No. A 75-315-025

ARGUED MAY 12, 2006—DECIDED NOVEMBER 13, 2006

Before MANION, KANNE, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Petitioner Ferdinand Pjetri is a citizen and national of Albania, who filed for asylum in the United States in 1998. That request was denied, but he was granted voluntary departure by the Immigration Judge (IJ), and he departed the United States in 1998. In December 1999, he re-entered the United States, and was apprehended near the Mexican border by U.S. immigration officials. He again sought asylum and withholding of removal, and in addition requested protection under the United Nations Convention Against Torture (CAT). The IJ denied his claims for relief, and that decision was affirmed without opinion by the Board of Immigration Appeals (BIA). He now appeals that denial to this court.

Because this was his second asylum application, the issue before the IJ was whether he had evidenced changed circumstances which materially affect his eligibility for asylum. 8 U.S.C. § 1158(a)(2)(C) & (D). For that claim, the IJ therefore focused Pjetri's testimony on events occurring after the initial asylum determination. Because the CAT claim was unavailable at the time of the initial hearing, however, this was the first opportunity for Pjetri to present it to an IJ. Accordingly, the issue for the CAT claim was whether Pjetri had demonstrated by a clear probability that he would face persecution if removed to Albania. *Lhanzom v. Gonzales*, 430 F.3d 833, 842 (7th Cir. 2005). At the hearing on the two claims, the IJ declared that she had familiarized herself with the testimony at the initial asylum hearing. Because the IJ in that initial hearing had made no finding that Pjetri was incredible, the IJ in this hearing assumed the validity of that prior testimony for purposes of this hearing as well. The IJ focused testimony on events subsequent to the initial asylum determination, but allowed testimony regarding those past events as well where necessary.

Before the IJ, Pjetri alleged that he faced persecution as a member of the Association of Politically Persecuted Persons. That group was formed on behalf of victims of political repression under the communist rule between 1945 and 1990. The Albanian government had promised compensation to those individuals, but those promises remained unrealized. As a result, the APPP held meetings and sponsored demonstrations to pressure the government to fulfill that commitment. Pjetri argues that his participation in such APPP actions caused the government to take adverse actions against him and his family. He pointed to actions taken against him and his family prior to 1998—the date of the initial adverse asylum determination—and to actions taken against his family in Albania subsequent to 1998 (because he claims to have never returned to Albania,

that testimony did not include any actions against him personally). The actions against his family included an incident in which his son was accosted by classmates who were children of former communists, at which time his name was mentioned. He testified that he learned of the attack by a letter sent to him. Although Pjetri testified that his son was stabbed during that incident, the letter provided by Pjetri describing the incident contained no reference to a knife or any stab wounds. Pjetiri also testified as to threats made to his wife and children, including threats of physical harm and a threat to burn down their home. Pjetri's wife had subsequently fled to the United States, and was herself seeking asylum for persecution based on her membership and position of authority in the Democratic Party in Albania. Pjetri, however, based his asylum claim on his membership in the APPP, and claimed that he was fearful of both the democrats and socialists in Albania. Pjetri did not present his wife or daughter as witnesses, and did not provide affidavits from them in support of his claim. He bolstered his claim with documents including country reports, although the IJ relied on those reports in part to reject his claim.

Pjetri raises a number of challenges that he labels as "due process" violations as well as procedural violations. First, he argues that the IJ erred in failing to inform him of his rights to counsel, to free legal services, to present evidence, to cross-examine witnesses, and to appeal, as is required by 8 C.F.R. § 1240.10(a)(1). He asserts that the language of that regulation is mandatory, declaring that "the immigration judge shall" provide such notification, and that the failure to fulfill that requirement is a due process violation. We note that Pjetri in fact was represented by counsel, presented evidence, and appealed the decision (the right to cross-examine did not come into play as Pjetri was the sole witness), but Pjetri nonetheless argues that the failure to inform him of those rights requires a new hearing.

Along the same lines, he argues that the IJ erred in failing to inform him of his right to request voluntary departure. That is a curious argument, in light of Pjetri's argument to the BIA that the IJ erred in *denying* voluntary departure, thus indicating that Pjetri in fact sought that relief before the IJ (and presumably establishing a lack of prejudice, *see Feto v. Gonzales*, 433 F.3d 907, 912 (7th Cir. 2006)). As an added twist, the government argues that he in fact was not eligible for voluntary departure, but that is a claim that we ultimately need not decide.

Finally, Pjetri asserts that the IJ violated his right to due process by failing to allow him an opportunity to present his case for relief from removal. This due process claim stems from the IJ's alleged failure to allow him to present testimony as to events that occurred prior to the initial asylum determination. Pjetri argues that the IJ should have considered the events in his life as a whole, determining whether the cumulative effect demonstrated a CAT violation, particularly given that the CAT claim was unavailable to him until this hearing. Pjetri also asserts that the IJ should have had the benefit of the full panoply of events in determining whether he was entitled to withholding of removal.

We note initially that the record indicates that the IJ in fact considered the full range of events in making those determinations, declaring that she had familiarized herself with the testimony from the first hearing, and was incorporating it into her decision. In imposing initial limits on the testimony at the hearing, the IJ stated that she would accept the facts as stated in the prior IJ's decision, and noted that the prior IJ did not find Pjetri to be incredible. Therefore, the IJ familiarized herself with Pjetri's past testimony and assumed the credibility of that testimony. Moreover, despite her inclination to limit the testimony to avoid repetition with the first hearing, the IJ in fact allowed Pjetri to testify as to events that occurred prior

to that initial asylum determination during this second asylum hearing. Therefore, the record does not support Pjetri's contentions.

That matters not, however, because none of these claim of due process or evidentiary violations were presented to the BIA. The failure to exhaust administrative remedies precludes our review. *See* 8 U.S.C. § 1252(d)(1); *Margos v. Gonzales*, 443 F.3d 593, 599 (7th Cir. 2006). Nor does it help to characterize the alleged failures as "due process" violations. As we noted in *Feto v. Gonzales*, 433 F.3d 907, 912 (7th Cir. 2006), the only exception to the requirement that claims must be raised before the BIA is the situation in which the BIA itself would be powerless to address the problem, as might occur regarding some fundamental constitutional violations. *Id.* Where, however, a due process argument is based on procedural failings that the BIA is capable of addressing, the petitioner must exhaust his or her remedies at the BIA before bringing the claim in this court. *Id.* Where a petitioner fails to exhaust administrative remedies available to him or her, this court lacks jurisdiction to consider the argument. *Margos*, 443 F.3d at 599; *see also Feto*, 433 F.3d at 912 (discussing impact of REAL ID Act on jurisdiction, and recognizing that an alien is required to raise most issues before the BIA before we can reach them); *Boakai v. Gonzales*, 447 F.3d 1, 4 (1st Cir. 2006) ("Both before and after the REAL ID Act, this court lacks jurisdiction over a claim if the alien has not exhausted all administrative remedies as to that claim.")

That is the case regarding the alleged due process violations identified by Pjetri. Pjetri did not assert any of those claims before the BIA. He acknowledges as much regarding the alleged failure to notify him of his rights to counsel, to free legal services, to present evidence, to cross-examine witnesses, to appeal, and to request voluntary departure. It is true as well regarding the IJ's allegedly improper limitation of testimony. In appealing the IJ's

adverse determination of his CAT claim to the BIA, Pjetri presented only a cursory argument that the evidence he presented established a clear probability that he would be tortured or killed at the instigation of public officials should he return to Albania. He never asserted that the IJ improperly restricted the testimony relevant to the CAT claim, and he never argued that he was denied the opportunity to fully present his CAT claim. Similarly, Pjetri raised no argument before the BIA alleging that the IJ failed to consider the full range of events in reaching her conclusion. Accordingly, Pjetri has failed to exhaust his administrative remedies concerning the claims he presents to this court, and we lack jurisdiction to consider those claims. The appeal is dismissed for lack of jurisdiction.

A true Copy:

    Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*