In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 06-3275

FABIO GARCIA and LUZ M. FRANCO,

*Petitioners*,

*v.*

ALBERTO R. GONZALES,

*Respondent*.

———————

Petition for Review of an Order of
the Board of Immigration Appeals.
Nos. A97-102-247 & A97-102-248

———————

ARGUED JULY 10, 2007—DECIDED AUGUST 31, 2007

———————

Before BAUER, CUDAHY and RIPPLE, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Fabio Garcia, a native and citizen of Columbia, applied for asylum. He claimed that members of the Revolutionary Armed Forces of Columbia ("FARC"), an insurgent group, had threatened him because he was providing assistance to impoverished widows and orphans. The immigration judge ("IJ") denied Mr. Garcia's application, which his wife, Luz Marina Franco, had joined. The IJ found Mr. Garcia to be credible, but concluded that the threats he described did not constitute persecution. The Board of Immigration Appeals ("BIA") summarily affirmed the IJ's decision, and Mr. Garcia

brought this petition for review. For the reasons set forth in this opinion, we deny the petition.

# I

## BACKGROUND

Mr. Garcia entered the United States in November 2003 on a visitor's visa, which he overstayed. His wife had entered the United States in December 2000 and overstayed her visitor's visa as well. During removal proceedings, Mr. Garcia conceded removability, but requested asylum and withholding of removal on the ground that he had received death threats from FARC and feared that, if he returned to Colombia, he would be killed. At his removal hearing, Mr. Garcia testified that he was an entrepreneur who bought products from the peasants and farmers in Ubalá and sold them to distributors in Bogotá. In addition to his business dealings in Ubalá, he began taking clothing and toys to the widows and children living in Ubalá's shanty towns. Soon thereafter, the Colombian Institute of Family Welfare, a government organization located in Bogotá, formally commissioned Mr. Garcia to continue his humanitarian work on its behalf. With the official support of the government, Mr. Garcia was able to increase the amount of aid he could provide to the peasants of Ubalá. He also began examining human rights violations by FARC.

Mr. Garcia testified that his first encounter with FARC occurred in June 2001. He was on his way to the church in Ubalá when a peasant, who identified himself as a FARC helper, patted Mr. Garcia on the back and told him to "stop helping the women and the orphans and to stop engaging in politics." A.R. at 110. Mr. Garcia said he considered

reporting the incident, but the mayor of Ubalá convinced him not to file an official complaint. Instead, the mayor sent two police officers with Mr. Garcia to protect him while he carried out his official duties. Mr. Garcia testified that he felt safe walking around with the officers.

Mr. Garcia also recounted his second run-in with FARC, which occurred in December 2001 while he was campaigning for three candidates for elective office. During the campaign he received a call at his parents' house in Bogotá from someone who identified himself as a member of FARC. The caller told him that FARC had him under surveillance and that he was going to die if he did not "stop his activities." *Id.* at 115. The next month Mr. Garcia received a letter telling him that, if he did not stop his humanitarian and political activities, FARC would "initiate a trial by the people." *Id*. at 116. Mr. Garcia interpreted this threat to mean that the group would kill him. Once again he consulted the mayor about filing a complaint but decided against it after he learned that the mayor also had been threatened. Instead, Mr. Garcia testified, he stopped all of his non-business activities.

In April 2002, while Mr. Garcia was attending a dairy fair in Ubate, two men grabbed him by the arms and told him, "You thought you were going to get away and that you weren't going to pay." *Id.* at 119. Mr. Garcia testified that he started shouting for help, and the men escaped into the crowd. Frightened, Mr. Garcia immediately left for Bogotá. Despite moving, Mr. Garcia explained, he continued to receive threatening phone calls at his parents' house in Bogotá and also received threatening calls on his cell phone.

Mr. Garcia's final encounter with FARC occurred in November 2002. He testified that he had traveled back to

Ubalá with the town's mayor to celebrate the political victories of the three candidates he had helped to elect. He and the mayor traveled with police officers and did not let anyone know that they were planning to attend the celebration. Nothing happened to Mr. Garcia while he was in Ubalá, but, on the way back to Bogotá, he was stopped at a FARC roadblock and asked for identification. Mr. Garcia testified that one of the men at the roadblock was one of the assailants who had grabbed him at the dairy fair in Ubate. The man pulled Mr. Garcia from the car and hit him on the head with the butt of his gun. Shortly thereafter, the Colombian air force arrived and fired shots from a helicopter, freeing the 244 people who had been stopped at the roadblock. As the man from Ubate ran off, he told Mr. Garcia that they would meet again. When Mr. Garcia returned to his parents' home, he learned that a caller from FARC had warned that Mr. Garcia would be killed the next time someone from FARC saw him. Mr. Garcia testified that he fled to the United States later that month and that he feared he would be killed if he returned to Colombia.

The IJ found Mr. Garcia credible, but nevertheless denied his asylum application. The IJ ruled that Mr. Garcia had not demonstrated past persecution because FARC never acted on any of its threats and because Mr. Garcia did not demonstrate that the Colombian government was unable or unwilling to protect him. The IJ further ruled that, although Mr. Garcia has a genuine subjective fear of returning to Colombia, he had failed to establish that his fear was objectively reasonable. Again, the IJ noted that, during the time FARC was threatening him, Mr. Garcia never was harmed seriously, nor did Mr. Garcia offer any evidence that FARC carried out any of the threats it made

against the mayor of Ubalá. The IJ denied all forms of relief, and the BIA affirmed without opinion.

## II

## DISCUSSION

Mr. Garcia contends that the BIA erred in its conclusion that he did not qualify for asylum on the ground that he had failed to establish past persecution or a well-founded fear of future persecution. Where, as here, the BIA summarily affirms the decision of the IJ, we review the IJ's decision as the final agency determination. *Tapiero de Orejuela v. Gonzales*, 423 F.3d 666, 671 (7th Cir. 2005). We review the IJ's denial of an asylum claim under the substantial evidence standard. *Feto v. Gonzales*, 433 F.3d 907, 910-11 (7th Cir. 2006). We shall affirm if we find that the IJ's decision is supported by "reasonable, substantial, and probative evidence." *Id.* at 911 (citing *Ahmed v. Ashcroft*, 348 F.3d 611, 615 (7th Cir. 2003)). Under this deferential standard, we shall not reverse the IJ's determination "simply because we would have decided the case differently." *Margos v. Gonzales*, 443 F.3d 593, 597 (7th Cir. 2006) (citing *Jamal-Daoud v. Gonzales*, 403 F.3d 918, 922 (7th Cir. 2005)).

### A. Past Persecution

Mr. Garcia contends that his testimony that members of FARC repeatedly had threatened to kill him if he did not stop his government-affiliated humanitarian activities demonstrated that he was persecuted on account of an imputed political opinion. To demonstrate past persecution, however, it is not enough simply to demonstrate some

harm on account of a political opinion. To show past persecution, when the harm alleged was inflicted at the hands of private parties, a petitioner must demonstrate that the government was either unwilling or unable to protect him against the private parties. *See* 8 U.S.C. § 1101(a)(42)(A); *Tarraf v. Gonzales*, No. 06-2835, 2007 WL 2164157, slip op. at 2-3 n.2 (7th Cir. Jul. 30, 2007); *Hor v. Gonzales*, 421 F.3d 497, 501 (7th Cir. 2005).

Here, the IJ found that members of FARC are not governmental actors and that Mr. Garcia had failed to demonstrate that the Colombian government either condoned their behavior or was unwilling or unable to protect Mr. Garcia from it. Mr. Garcia himself admitted during his removal hearing that the mayor of Ubalá assigned two Colombian police officers to escort him as he carried out his humanitarian missions and that their presence made him feel safe. He later testified that he was again saved by the Colombian government when air force helicopters rescued him after he and 243 others were stopped at a FARC roadblock. Far from demonstrating an unwillingness or inability to protect him, Mr. Garcia's own testimony demonstrates that the government of Columbia was both willing and able to protect him from FARC. *Cf. Hernandez-Baena v. Gonzales*, 417 F.3d 720, 724 (7th Cir. 2005) (upholding the IJ's conclusion that the petitioner did not demonstrate that the government of Columbia was unwilling or unable to protect him from FARC where the record indicated that police responded immediately to his report that FARC members threatened to kill him and that no further threats had been made).

### B. Future Persecution

Mr. Garcia next contends that the IJ erroneously concluded that he did not establish a well-founded fear of future persecution. Mr. Garcia submits that his life would be in danger if he returned to Colombia because of the threats he received in the past and because "FARC is still active." Petitioner's Br. at 20. To establish a well-founded fear of future persecution, Mr. Garcia must demonstrate that the fear is both subjectively genuine and objectively reasonable in light of the credible evidence. *See Chakir v. Gonzales*, 466 F.3d 563, 569 (7th Cir. 2006).

The IJ found that, although Mr. Garcia's fear of returning to Colombia was subjectively genuine, his fear was not objectively reasonable because the Colombian government had protected Mr. Garcia from FARC's attempts to harm him in the past, and there was no indication that they would not or could not do so in the future. To the extent that Mr. Garcia's fear is based on the general civil strife resulting from the continued conflict between the government of Columbia and FARC, such fear does not constitute an objectively reasonable fear of future persecution. *See, e.g.*, *Ahmed v. Gonzales*, 467 F.3d 669, 673 (7th Cir. 2006) (noting that general conditions of hardship affecting entire populations are not persecution); *Selimi v. Ashcroft*, 360 F.3d 736, 740-41 (7th Cir. 2004) (explaining that political turmoil and civil strife that makes life unpleasant for ethnic minorities, some of whose members were engaging in an insurgency, does not render automatically each member of the minority subject to persecution). Therefore, we hold that the IJ's determination that Mr. Garcia had not established a well-founded fear of future persecution is supported by substantial evidence in the record.

**Conclusion**

The IJ's conclusion that Mr. Garcia did not demonstrate past persecution or a well-founded fear of future persecution is supported by substantial evidence in the record. Accordingly, we deny the petition for review and affirm the BIA's decision.

PETITION DENIED
DECISION AFFIRMED

A true Copy:

　　　Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*