NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with

Fed. R. App. P. 32.1

# United States Court of Appeals

For the Seventh Circuit
Chicago, Illinois 60604

Argued May 12, 2009
Decided September 2, 2009

Before

FRANK H. EASTERBROOK, *Chief Judge*

DIANE S. SYKES, *Circuit Judge*

JOSEPH S. VAN BOKKELEN, *District Judge*\*

| | |
|---|---|
| **No**. 08-3449 | |
| AMMO BRIKHA BOBO,<br>        *Petitioner*, | Petition for Review of an<br>Order of the Board of<br>Immigration Appeals. |
| **v.** | |
| ERIC H. HOLDER, JR., Attorney General of the<br>United States,<br>        *Respondent*. | No. A99-864-490 |

**Order**

Ammo Brikha Bobo, a native and citizen of Iraq, applied for asylum, withholding of removal, and protection under the United Nations Convention Against Torture (CAT). The immigration judge denied his petition, concluding that inconsistencies between his testimony and his written statement, the fact that his testimony was confusing and lacking in detail and that the corroborative evidence failed to clarify the confusion that his testimony created, rendered his claims not credible. Alternatively, the IJ determined that even without an adverse credibility determination, Bobo failed to show the persecution necessary to establish eligibility for asylum. The Board of Immigration Appeals affirmed the IJ's decision without opinion. We deny Bobo's petition for review.

---

\*  Of the Northern District of Indiana, sitting by designation.

## I. Background

Petitioner Bobo was admitted to the United States on a six-month visitor's authorization to be a bone marrow donor for his sister Mona. The authorization expired on July 23, 2006. When he remained in the United States beyond that date, the Department of Homeland Security initiated removal proceedings against him by filing a Notice to Appear before the Immigration Court. Bobo petitioned for asylum and withholding of removal on the basis of his race, religion, nationality, political opinion, and membership in a particular social group, and protection under the CAT.

### A. The Asylum Application

In his application, Bobo stated that he is an Iraqi national, an ethnic Assyrian, and a Christian born in 1973. In the section of the application that required him to give information about his education, he listed only a trade school at Kamp Sara, Iraq, that he attended from 1989 to 1991. In the statement accompanying the application, he wrote of his fear of being killed if he were to return to Iraq both because of his Assyrian nationality and death threats from Islamic extremists. He related that in the 1940s his grandparents' Assyrian village was destroyed in an attempt to destroy Kurdish settlements. His family moved to Baghdad. Islamic extremists killed one of his uncles in the 1970s. Two of his aunts and another uncle fled Iraq as refugees and came to the United States in the 1970s. A sister was abducted and raped by Iraqi security officers in 2002. The Assyrian church he attended in Baghdad was bombed in 2005. Shortly before the hearing four other Christian churches in Iraq were bombed.

According to his statement, while Bobo was in college, he met a Muslim girl named Leyla, from a powerful and wealthy Arab tribe in Iraq, who told him that her family had ties to the government and could make things happen to people. Leyla became enamored of him and suggested that they would marry one day. He rejected the suggestion, telling her that he could not convert to the Muslim religion. In 1993, after this rejection, some of Leyla's relatives came to the house in Baghdad where he lived with his mother when he was not at home and informed his mother that Bobo had violated Leyla and must now marry her and become a Muslim. Out of fear, he stopped going to school and went to live with other relatives in Baghdad. When he returned home a few weeks later, Leyla's relatives found him and beat him severely, accusing him of having abused Leyla. He suffered a severe head injury and the doctors told his brother that he would not remember what had happened to him. After a hospital stay of about a week he went into hiding at the home of some relatives. Leyla's relatives went looking for him at his mother's home, telling her that they would not rest until they found him. A month later Leyla's relatives found him on the street. He was shot in both legs.

After the shooting, he lived on the run until 1998, when he found a way to leave Iraq for Turkey. He was in Turkey for about two weeks until he obtained a fake passport and traveled to Holland, where he lived in a refugee camp. He applied for

asylum there in 2000. His application was denied initially and on appeal but a Dutch immigration judge allowed him to stay in Holland when the war in Iraq began in 2003. In 2006 he traveled to the United States.

In his written statement Bobo related that his sister Munira was abducted and raped by security officers in Mosul in 2002. He also presented her affidavit as part of his application for asylum. She wrote that in 1993 her brother, the petitioner, was being hounded by Muslim extremists for refusing to marry a Muslim girl he had met in school. She described Bobo's beating, the doctors' statements that his memory would be impaired because of the head trauma, and the shooting. After her brother fled to Turkey in 1998, Muslim extremists came looking for him. They threatened to take advantage of her as her brother had taken advantage of the Muslim girl. The men told her family that they would kill the petitioner if they found him. Different men came to their house constantly, harassing them about Bobo's whereabouts. Out of fear of these men, she went to visit her uncle, Esho Youkhana, in northern Iraq. He was head of the local Assyrian Council, affiliated with the Assyrian Democratic Movement. In December 2000 Iraqi security men broke into her uncle's house and arrested about ten people, including Munira. They questioned her about her uncle's activities. Three months later, after she returned to Baghdad, she was called to the Iraqi Security headquarters in Baghdad. She was again questioned about her uncle and the petitioner. In September 2001 Iraqi security men once more questioned her about the petitioner. When she told them she did not know where he was, they beat her and raped her. She was held for ten days. She entered the United States in 2004 and was granted asylum in the United States in January 2005.

Bobo submitted a letter from Ahurad Jajeh, a doctor in the Division of Hematology and Oncology at Stroger Hospital of Cook County, in support of his application. In the letter the doctor stated that Bobo has old scars secondary to gunshot wounds on his legs as well as scars over the head and scalp resulting from physical abuse "inflicted by security members of the former Iraqi regime."

## B. The Asylum Hearing

At the asylum hearing on March 7, 2007, Bobo testified through an interpreter. He related that his sister Munira had told him that Muslims and government groups came looking for him after he left Iraq. He talked about Munira's experiences after he left and said that his uncle Eshu, who had been active with Assyrian politicians, had been killed. According to Bobo, Munira was granted asylum because of the uncle's death and the fact that she was questioned and abused.

Bobo repeated the story of his experiences with Leyla and her family, stating that he had not asked for police protection because her family knew more people in the government than he, and that he was afraid to go to the police because he would be asked what he did to those people that they would hurt him. According to Bobo, some of Leyla's relatives had connections to the government of Saddam Hussein and the Ba'ath Party. He initially testified that the shooting occurred in 1993, but explained that

he could not leave Iraq until 1998, when his relatives were able to assist him financially. Later, he appeared to agree that the shooting took place in 1998. He left Iraq mainly because he feared Leyla's relatives, but he said he also fears Muslims, because of his Christianity. He stated that he is afraid to return to Iraq because there is no official government and everyone is afraid. He explained that he is afraid of terrorists, but not the government: the government is new and cannot do anything.

The 2006 International Religious Freedom Report for Iraq and the 2006 Country Report on Human Rights Practices for Iraq, both released by the United States Department of State, were admitted as exhibits at the hearing. According to the reports, the Iraqi government has not engaged in the persecution of any religious group since 2003, but unsettled conditions prevented effective governance in parts of the country. Criminal gangs, insurgents, and Islamic militants have targeted non-Muslims, and members of the Baghdad Christian community have received threat letters demanding that Christians leave or be killed. Frequent attacks on places of worship were noted.

### C. The IJ's Decision

On April 5, 2007, the IJ issued a written decision denying Bobo's applications for asylum, withholding of removal, and Convention Against Torture protection. The IJ concluded that Bobo was not credible because he presented contradictory and vague evidence and failed to reconcile the contradictions through his testimony or corroborative evidence. Alternatively, the IJ held that even if Bobo were found to be credible, the mistreatment he received as a result of his relationship with Leyla did not constitute persecution because it was committed by private actors on account of a personal dispute rather than government actors. Moreover, Bobo did not produce evidence from which it could be reasonably concluded that the harm he suffered was motivated, at least in part, by an actual or imputed protected ground. The IJ concluded that Bobo had not shown a link between his beatings and his Christian faith or Assyrian ethnicity or that the beatings were on account of any political opinion or imputed political opinion. The IJ further found that Bobo had failed to meet his burden of demonstrating a well-founded fear of persecution if he returned to Iraq. Inasmuch as Bobo failed to satisfy the lower burden of proof required for asylum, he necessarily failed to satisfy the higher burden—a clear probability of persecution in the country designated for removal on account of race, religion, nationality, membership in a particular social group, or political opinion—required to establish his eligibility for withholding of removal. Finally, the IJ found that Bobo had not met his burden of proving that it is more likely than not that he would be tortured if removed to Iraq.

Bobo challenges the IJ's adverse credibility determination, her finding that his mistreatment by Leyla's family did not amount to past persecution, and the adequacy of her consideration of evidence of a pattern and practice of persecution of Assyrian Christians. He did not raise any issues regarding the IJ's refusal to withhold removal or to grant protection under the CAT.

## II. Analysis

Because the BIA summarily affirmed the IJ's decision without opinion, we review that decision directly. *Balliu v. Gonzales*, 467 F.3d 609, 612 (7th Cir. 2006). The review is deferential. *Musollari v. Mukasey*, 545 F.3d 505, 508 (7th Cir. 2008). We consider the record as a whole to determine whether the IJ's decision was supported by reasonable, substantial, and probative evidence. *Oqayonne v. Mukasey*, 530 F.3d 514, 518 (7th Cir. 2008). Administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to reach a contrary conclusion. 8 U.S.C. §1101(a). 8 U.S.C. §1252(b)(4)(B).

### A. Persecution

We find it unnecessary to discuss the IJ's credibility finding because, even if Bobo's narrative were credited in its entirety, he did not establish his entitlement to asylum. We agree with the IJ that Bobo's description of the harm he suffered as the result of his relationship with Leyla has not been shown to be persecution as that term has been defined in decisions of this court. As the IJ noted, persecution is generally something governments do, not private individuals. Only when a government is powerless to protect its citizens from private actors or actually condones or acquiesces in their abuse can misconduct by private actors constitute persecution. *See Chatta v. Mukasey*, 523 F.3d 748, 753 (7th Cir. 2008), *Garcia v. Gonzales*, 500 F.3d 615, 618 (7th Cir. 2007). A review of the record as a whole does not compel the conclusion that there was any government involvement in the incidents involving Leyla's family or that the Iraqi government condoned it or was powerless to protect Bobo. In fact, Bobo testified that he never even reported the beatings and shooting to authorities. Moreover, the evidence does not compel the conclusion that Bobo's mistreatment was on account of his religion or ethnicity, or any other protected ground. Nothing in the record suggests that Leyla's family was motivated by anything other than a belief that Bobo had mistreated her.

Bobo has also argued that he is entitled to asylum because, as an Assyrian Christian, he has a well-founded fear of future persecution if he returns to Iraq. If an applicant does not establish past persecution, he must satisfy both the objective and subjective prongs of the well-founded fear standard: the fear must be subjectively genuine and objectively reasonable. *Capric v. Ashcroft*, 355 F.3d 1075, 1093 (7th Cir. 2004). Under the objective test, an asylum applicant must establish either that there is a reasonable probability he will be singled out individually for persecution or that there is a pattern or practice in his country of persecution against the group to which he belongs. 8 C.F.R. §1208.13(b)(2). To constitute a pattern or practice of persecution, the persecution of a protected group must be a "systematic, pervasive, or organized effort to kill, imprison, or severely injure members of the protected group, and this effort must be perpetrated or tolerated by state actors." *Mitreva v. Gonzales*, 417 F.3d 761, 765 (7th Cir. 2005). General conditions of hardship affecting entire populations are not persecution. *Capric*, 355 F.3d at 1084.

Bobo has not argued that he would be singled out individually for persecution as an Assyrian Christian. Moreover, he cannot prevail under the pattern or practice method because the evidence does not compel the conclusion that the government of Iraq is complicit in the mistreatment or powerless to prevent it. *Chatta v. Mukasey*, 523 F.3d 748 at 753. As the IJ noted, according to current country reports, the present Iraqi government is committed to protecting its multi-religious society. Bobo in fact testified that he did not fear the government, but terrorists in Iraq and from other countries.

## B. Withholding of Removal and Protection Under the CAT

The Immigration and Naturalization Act prohibits the Attorney General from removing an alien to a country where his life or freedom would be threatened because of his race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. §1231(b)(3)(A). An applicant seeking withholding of removal must demonstrate that he is more likely than not that he will suffer persecution if he is removed. Under the CAT he must show that it is more likely than not that he would be tortured if removed to Iraq. 8 C.F.R. §208.16(c)(2). However, he has waived any challenge to the IJ's denial of relief under these provisions by failing to present any argument concerning them in his appellate brief. *See United States v. Dabney*, 498 F.3d 455, 460 (7th Cir. 2007).

## III. Conclusion

The Immigration Judge's holding that Bobo failed to demonstrate the persecution or fear of persecution necessary to establish his eligibility for asylum is substantially supported by the record, even assuming Bobo's credibility. We therefore DENY his petition for review.