In the

# United States Court of Appeals
## For the Seventh Circuit

No. 03-3508

XHEVGJET KLLOKOQI,

*Petitioner,*

*v.*

ALBERTO R. GONZALES, Attorney General
of the United States,[1]

*Respondent.*

Petition for Review of an Order
of the Board of Immigration Appeals.
No. A76-868-899

ARGUED SEPTEMBER 14, 2004—DECIDED DECEMBER 12, 2005

Before CUDAHY, ROVNER, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Xhevgjet Kllokoqi, a citizen of
the Kosovo region of the Federal Republic of Yugoslavia and
an ethnic Albanian, appeals a final order of the Board of
Immigration Appeals (BIA) affirming an immigration
judge's (IJ) denial of his application for political asylum and
withholding of removal. Because the IJ discredited Kllokoqi
without substantial evidence and failed to consider all of

---

[1] Pursuant to Fed. R. App. P. 43(c), we have substituted Alberto
R. Gonzales for John Ashcroft as the named respondent.

Kllokoqi's persecution arguments, we vacate and remand for further proceedings.

## I. Background

Xhevgjet Kllokoqi is a native and citizen of the Federal Republic of Yugoslavia, and an ethnic Albanian from the Kosovo region. Kllokoqi was also a member of the LDK (Democratic League of Kosovo), a political party of Kosovar ethnic Albanians. During the time of Kllokoqi's alleged involvement in the LDK party, ethnic Albanians in Kosovo experienced extreme oppression at the hands of ethnic Serbs through Slobodan Milosevic's ruling regime. Kllokoqi testified that the Serbian authorities arrested and detained him on five separate occasions in connection with his opposition involvement. Kllokoqi claims that on each of these occasions the police severely beat him.

Kllokoqi's alleged problems with the Serbian authorities began in March 1993 after his participation in a demonstration for Kosovar independence and against the persecution of Albanian teachers. The Serbian authorities arrested Kllokoqi and sentenced him to 90 days in jail. He claims he served 45 days and was released after the Serbian authorities beat him severely enough to destroy his left testicle. Because of this beating, Kllokoqi was bed-ridden for 40 days and could not graduate from high school on time. He testified that he finished his final exams in August, but was issued a diploma with a June graduation date.

Then, on June 2, 1994, Kllokoqi claims he was arrested a second time after protesting continued Serbian control over Kosovo. He testified that during this detention, the police beat him with fists and billy clubs. Kllokoqi further alleged that the Serbian authorities detained him again on August 14, 1994. At that time, the police arrested him for distributing fliers demanding Albanian schools. He said that the

police interrogated him and beat him with metal poles for an hour.

Kllokoqi's fourth arrest came on October 19, 1995, for publishing an editorial in a local paper advocating the right of Albanians to celebrate their national flag day publicly. On this occasion, Kllokoqi claims he was detained for seven hours and beaten until he lost consciousness. Kllokoqi's final arrest came on January 27, 1997. He claims the police arrested him while he gave a speech at an LDK demonstration. Kllokoqi alleges that the police beat him, keeping him in custody for one day.

Kllokoqi testified that he received a subpoena on May 20, 1997 but feared for his life and fled to Croatia rather than appear in court. During his eight-month stay in Croatia, Kllokoqi learned that the Yugoslav courts had convicted him *in absentia* and sentenced him to three years imprisonment for propaganda against the government. Kllokoqi then fled Croatia and arrived in the United States on March 3, 1998.

Kllokoqi applied for asylum in November of 1998. In conjunction with Kllokoqi's application, Dr. David Goldberg of Cook County Hospital evaluated Kllokoqi to determine whether his injuries were consistent with the beatings he had described. In his report submitted to the IJ, Dr. Goldberg concluded that Kllokoqi's injuries were indeed commensurate with his history of torture while imprisoned in Kosovo. More specifically, Dr. Goldberg found the absence of Kllokoqi's left testicle consistent with a "reported scrotal injury with post-trauma involution of the testicle." Also, Dr. Goldberg opined that the lesions on Kllokoqi's shins were "consistent with the history of being struck on the shins by a round metal pole."

The other expert in this case was the government's forensic document examiner, Gideon Epstein. Epstein examined three pieces of evidence Kllokoqi presented in

support of his application for asylum: Kllokoqi's warrant, his subpoena, and his Yugoslav identification card. Epstein authenticated the identification card but could not authenticate the other documents because the government's laboratory did not have originals for comparison. Epstein concluded however, that the warrant and subpoena were altered. Epstein opined that someone removed toner and replaced it with other writing, someone hand-drew a portion of a seal, and someone photocopied the documents, which, he said, was an unusual way to produce official forms.

Although Epstein found the evidence of alteration and the use of a photocopier suspicious and unusual, he could not state conclusively that the documents were not produced this way by the issuing authorities. He also conceded that there could be other reasons for why the toner was missing. For instance, Epstein theorized that the toner on the machine that produced the document might not have been heated properly, or the toner could have worn away from creasing the paper.

Kllokoqi had several hearings before the IJ. He answered questions about his political involvement and educational background. Kllokoqi could not remember the name of his high school, and was unclear regarding the language of instruction at this school and whether he took Serbian classes.

Following Kllokoqi's hearings, the IJ denied Kllokoqi's petition for asylum and withholding of removal. The IJ cited a lack of credibility and a failure to show a well-founded fear of future persecution. The IJ made an adverse credibility finding against Kllokoqi because, according to the IJ, Kllokoqi's testimony regarding his education was inconsistent, his Yugoslav subpoena and warrant appeared to have been altered, and his injuries and political involvement were not corroborated with evidence at the hearing.

The IJ acknowledged that these concerns alone might be insufficient to merit an adverse credibility finding but concluded it was proper here in light of a State Department report warning that ethnic Albanians from other regions of the world might pose as Kosovars in an attempt to gain asylum. The IJ also denied the petition because he did not find that Kllokoqi had a well-founded fear of future persecution in the Kosovo region of Yugoslavia. The IJ decided that a change in country circumstances since 1998 meant Kllokoqi was no longer in danger of persecution.

The BIA affirmed the IJ's decision without opinion.

## II. DISCUSSION

### A. Standard of Review

Because the BIA affirmed the IJ's order without opinion, this court reviews the IJ's credibility determination and order denying asylum directly. *Ememe v. Ashcroft*, 358 F.3d 446, 450 (7th Cir. 2004).

The IJ's adverse credibility determination is subject to the substantial evidence standard of review and must be "supported by 'specific, cogent reasons . . . [that] bear a legitimate nexus to the finding.'" *Ahmad v. INS*, 163 F.3d 457, 461 (7th Cir. 1999) (quoting *Nasseri v. Moschorak*, 34 F.3d 723, 726 (9th Cir. 1994), overruled on other grounds by *Fisher v. INS*, 79 F.3d 955 (9th Cir. 1996)). We will not overturn adverse credibility determinations simply because the evidence might support an alternate finding. *Ahmad*, 163 F.3d at 461 (citing *Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992)). However, we shall not "uphold 'credibility determinations based on speculation or conjecture, rather than evidence in the record.'" *Korniejew v. Ashcroft*, 371 F.3d 377, 383 (7th Cir. 2004) (quoting *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002)).

Like an adverse credibility determination, we review the denial of a grant of asylum under the substantial evidence standard. *Lin v. Ashcroft*, 385 F.3d 748, 751 (7th Cir. 2004). "[W]e uphold the IJ's determination if it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Id.* at 751 (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)); *see also Ahmad v. Ashcroft*, 348 F.3d 611, 615 (7th Cir. 2003). Although our review of the agency determination is highly deferential and we may not reverse merely because we might have decided the case differently, *Yadegar-Sargis v. INS*, 297 F.3d 596, 601 (7th Cir. 2001) (citation omitted), we will not "automatically yield to the IJ's conclusions when they are drawn from insufficient or incomplete evidence." *Georgis v. Ashcroft*, 328 F.3d 962, 968 (7th Cir. 2003).

## B.  Adverse Credibility Determination Flawed

We find that the IJ's adverse credibility finding is not supported by specific, cogent reasons that bear a legitimate nexus to the IJ's adverse credibility determination. The IJ's adverse credibility ruling is based on three primary concerns. First, Kllokoqi's alleged vague and inconsistent testimony about his education. Next, the purportedly fraudulent subpoena and warrant submitted by Kllokoqi. Finally, Kllokoqi's alleged failure to submit supporting evidence to corroborate the details of his alleged activities and mistreatment.

The IJ found several aspects of Kllokoqi's testimony about his education inconsistent and suspicious: Kllokoqi did not remember the name of his high school, he gave inconsistent answers regarding the presence of Serbian teachers in the school and the language spoken there, and gave conflicting dates for his graduation and his convalescence following a beating by Serbian police.

Kllokoqi argues, and we agree, that these are minor inconsistencies and that the IJ erred in relying on them to make an adverse credibility finding. *See Gao*, 299 F.3d at 272 (stating that minor discrepancies that do not involve the "heart of the asylum claim" are not an adequate basis for an adverse credibility finding) (citation omitted). In light of the war in the Balkans, as well as the number of traumatic and tragic events that have happened to Kllokoqi and in Kosovo, we are not overly concerned that Kllokoqi could not recall the name of the high school he attended over ten years ago. This lapse of memory does not go to the heart of Kllokoqi's asylum claim.

However, a lapse in memory can be considered significant enough to raise serious credibility issues. In *Korniejew*, this court upheld an IJ's adverse credibility ruling where an applicant claimed she was expelled from college because of her Jewish faith, then testified inconsistently as to whether she graduated from college. 371 F.3d at 386. However, unlike in *Korniejew*, Kllokoqi's high school education is unrelated to his asylum claim, and his failure to remember the high school's name amounts to nothing more than a trivial detail.

Unlike the IJ, we do not think that Kllokoqi's responses to questions about whether there were Serbian or Albanian teachers in his school or what languages classes were taught in his high school merit an adverse credibility finding. It seems possible from the record that Kllokoqi did not understand the questions. When asked about his classes, Kllokoqi responded, "Most of the classes were in Albanian but there were a lot of Serbian teachers too. We had Serbian teachers but the final exams that I took I gave in Albanian." It is hard to tell whether Kllokoqi was saying that he himself had Serbian teachers or just that there were Serbian teachers in the school. Either way, the issue is minor and insignificant to the claim.

What the IJ seems to find most suspicious and inconsistent are Kllokoqi's responses to questions about his graduation. Kllokoqi testified that he was arrested in March 1993, served 45 days of his sentence, and spent another 40 days recovering from the injury to his scrotum, which left him unable to walk.

The government argued that Kllokoqi could not have graduated from high school in June of 1993, as claimed in his application, if he was bedridden at the time. The IJ accepted the government's argument. However, an asylum application need not be complete and may be supplemented with testimony. *See, e.g.*, *Pop v. INS*, 270 F.3d 527, 531-32 (7th Cir. 2001). Kllokoqi supplemented his application by offering a credible explanation of the inconsistency in dates. When questioned, Kllokoqi explained that the diploma listed June as the date issued because that was the usual graduation date. However, Kllokoqi completed his exams and actually received his diploma in August. Kllokoqi explained, "I finished my final exams in August and I was through with school in August; but I'm not saying literally that I was in school the whole time."

Unlike the IJ, we find nothing incredible about this explanation. We do not see it as an unusual practice for a school to allow a student to complete graduation requirements after the school year has completed, even though diplomas are printed in advance with an official graduation date of May or June. It is entirely logical that the school would have allowed Kllokoqi to complete his examinations at a later time given his injuries. As such, we find that the IJ's adverse credibility finding was improper.

The IJ conceded that the vagueness and inconsistencies he found might not alone have led him to find Kllokoqi not credible but decided that they were significant because he doubted Kllokoqi's Kosovar identity. He based his suspicion on the State Department Country Report for 2000 that warned, "Albanians from other provinces in

Yugoslavia . . . have attempted to use the situation in Kosovo to make fraudulent claims."

This general statement in the Country Report is insufficient to rebut Kllokoqi's detailed, specific testimony establishing his place of origin. State department reports are entitled to deference, but the IJ must make an individualized determination. *Zheng v. Gonzales*, 409 F.3d 804, 811 (7th Cir. 2005)*; Toptchev v. INS*, 295 F.3d 714, 723 (7th Cir. 2002). The report serves as a source of good background information, but it cannot replace the specific testimony of a credible witness. *See, e.g.*, *Bace v. Ashcroft*, 352 F.3d 1133, 1139 (7th Cir. 2003) ("[I]t would be improper to find that a witness's testimony about specific events could be 'contradicted' by a generalized State Department report broadly discussing conditions in the applicant's country of origin.").

Using the generalized Country Report as background and examining the individual circumstances of Kllokoqi's case, there is no evidence to suggest that Kllokoqi is lying about his identity as a native of Kosovo. He presented a Yugoslav identification card that verifies he is a native of Kosovo. The government's expert determined the card was authentic and the government does not contest the expert's finding. The identification card and the overall consistency of Kllokoqi's testimony convinces us that the IJ lacked sufficient reason to question Kllokoqi's identity. The IJ's speculation based solely on the Country Report cannot sustain an adverse credibility finding in the absence of any other evidence that directly refutes the IJ's finding.

We are also not persuaded by the IJ's contention that Kllokoqi's credibility was damaged by his use of allegedly fraudulent documents. First, the conclusion that Kllokoqi's warrant and subpoena were altered is flawed. Epstein acknowledged that he could not conclude that these documents were not in their original state. For example, he

stated that the toner might not have been removed deceit-fully, but, rather, rubbed off through folding and unfolding.

Second, even if the documents were altered by some-one other than the issuing authorities, the IJ made no finding that Kllokoqi altered the documents or knew or suspected that they were altered. If he did not know, then the alleged alterations cannot be used as evidence against the credibility of his testimony that they are genuine. *See Kourski v. Ashcroft*, 355 F.3d 1038, 1039 (7th Cir. 2004) (reversing an adverse credibility finding where the IJ did not find that the petitioner knew or suspected that his birth certificate was a forgery). Kllokoqi testified that after leaving Croatia, his family sent him the warrant and the subpoena in Italy. Kllokoqi denied knowledge of any alterations. Because there is no evidence or finding that he knew or suspected the subpoena and warrant were altered, the documents should not have been used to impugn his credibility.

Third, the IJ ignored the identification card as posi-tive credibility evidence. Kllokoqi's possession of an au-thentic Yugoslav identification card helps his credibility, and the government does not contest the card's authentic-ity. The IJ, however, never mentions the card anywhere in his reasoning for making an adverse credibility find-ing and focuses instead on evidence that the warrant and subpoena were altered. The IJ should have given the identification card's authenticity proper weight.

The final basis for the IJ's adverse credibility finding is his determination that Kllokoqi did not provide corrobo-rating evidence to support his testimony. We disagree not only with the IJ's improper and erroneous insistence that Kllokoqi must present corroborating evidence, but also with the suggestion that he did not provide any.

This court has "repeatedly emphasized that corroborative evidence is *not* necessary when the applicant's testimony is

otherwise credible." *Lin*, 385 F.3d at 756; *see* 8 C.F.R. § 208.13(a) ("The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration."). Viewing the record as a whole, we think that Kllokoqi's testimony was consistent and that the IJ's determination that Kllokoqi's testimony was vague and incredible is not supported by the record. Kllokoqi's testimony was not internally inconsistent, and he had reasonable explanations for any potential discrepancies. As such, there is no corroboration requirement.[2]

Although Kllokoqi's claim did not require corroboration, he presented evidence which the IJ appeared to ignore. As we mentioned above, Kllokoqi's identification card corroborates his claim that he is from Kosovo. What is most disturbing to this court, however, is the IJ's failure to properly consider Dr. Goldberg's testimony. In his report, Dr. Goldberg concluded that Kllokoqi's injuries, including those to his scrotum and shins, were consistent with severe beatings. If the IJ needed corroborating evidence, Dr. Goldberg's testimony was sufficient.

Instead, the IJ inexplicably replaced the testimony of both Kllokoqi and Dr. Goldberg with his own suggestion that Kllokoqi injured his testicle while riding a bicycle. It is error to base an adverse credibility decision on speculation and conjecture. *Korniejew*, 371 F.3d at 383 (citation omitted). During the hearing, the IJ posited his bicycle theory no fewer than four times. The IJ did not, however, solicit any

---

[2] That is not to say that corroboration is never necessary in immigration proceedings. Indeed, corroborating evidence is necessary to buttress an unconvincing case. *Uwase v. Ashcroft*, 349 F.3d 1039, 1041 (7th Cir. 2003); *see, e.g.*, *Ahmad*, 163 F.3d at 461-63 (affirming asylum denial where applicant's testimony conflicted with his application and the applicant failed to submit additional corroborative evidence).

evidence that Kllokoqi rode a bicycle, that people in Kosovo commonly ride bicycles, or that Kllokoqi's severe injuries could have been caused by bicycle riding. At one point, the IJ interrupted closing argument to note that "even here in this country cyclists . . . injure themselves as well. And I note that bicycling is one of the means of transportation in Europe and Kosovo as well. How do I know this was not a bicycle accident?" The IJ gave Kllokoqi and his attorney no chance to answer that question. In fact, the IJ refused Kllokoqi's attorney's request to recall Dr. Goldberg so the doctor could give his medical opinion on this bicycle-riding theory. The IJ's continued speculative insistence that Kllokoqi's testicle was injured from bicycle riding was highly inappropriate. There is no reason to believe that Kllokoqi and his doctor were not telling the truth, and the IJ's conclusion that Kllokoqi lacked credibility is unsupported by the record.

## C. Well-Founded Fear of Future Persecution

Aside from the improper adverse credibility finding, we remand Kllokoqi's claim because the IJ failed to fully consider all of Kllokoqi's arguments. We are therefore left unclear as to whether the government has rebutted Kllokoqi's presumption of future persecution. The Immigration and Nationality Act (INA) provides that the Attorney General may grant asylum to any alien who qualifies as a refugee, 8 U.S.C. § 1158(b)(1)(A), defined as a person outside his or her home country "who is unable or unwilling to return . . . because of persecution or a well-founded fear of persecution on account of . . . political opinion," 8 U.S.C. § 1101(a) (42) (A). Once past persecution is established, it gives rise to a rebuttable presumption that the refugee will face future persecution. 8 C.F.R. § 208.13(b)(1); *see, e.g.*, *Oforji v. Ashcroft*, 354 F.3d 609, 613 (7th Cir. 2003). The government can overcome that presumption if it estab-

lishes, by a preponderance of the evidence, that conditions in the applicant's home country have changed such that he no longer has a "well-founded fear of persecution." 8 C.F.R. § 208.13(b)(1)(A); *see, e.g.*, *Begzatowski v. INS*, 278 F.3d 665, 671 (7th Cir. 2002).

An applicant may also affirmatively demonstrate a well-founded fear of future persecution. To do so, he must show a reasonable possibility of future persecution, not necessarily a clear probability of future persecution. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 440 (1987); *INS v. Stevic*, 467 U.S. 407, 424-25 (1984). The applicant may establish a reasonable possibility of future persecution by showing that there is even a 10 percent chance that he will be shot, tortured, or otherwise persecuted. *Cardoza-Fonseca*, 480 U.S. at 440. The case-specific establishment of a well-founded fear of future persecution encompasses objective and subjective elements. *Useinovic v. INS*, 313 F.3d 1025, 1030 (7th Cir. 2002). To satisfy the subjective component, an individual must show that he has a genuine fear of returning to his home country. *Asani v. INS*, 154 F.3d 719, 725 (7th Cir. 1998). To satisfy the objective component, the applicant must demonstrate that a reasonable person in his circumstances would fear persecution if forced to return to his native country. *Id*.

The government can only rebut the presumption of future persecution by showing by a preponderance of the evidence that the conditions in Kosovo have changed enough to overcome the applicant's fear of future persecution. *See* 8 C.F.R. § 1208.13(b)(1)(i)(A); *Brucaj v. Ashcroft*, 381 F.3d 602, 606-07 (7th Cir. 2004). At this time, it is unclear whether the government can meet that burden. In his opinion, the IJ wrote, "Even assuming that [Kllokoqi] had established past persecution, he does not have a well founded fear of future persecution because there has been a fundamental change of circumstances in Kosovo." However, Kllokoqi argued in his brief and at oral argument

that there is still ethnic violence in Kosovo and that the country continues to lack an independent judiciary. The IJ failed to address these concerns which directly address the issue of whether Kllokoqi has a well founded fear of future persecution. Until the IJ addresses all of Kllokoqi's arguments, we cannot determine whether the government has rebutted Kllokoqi's presumption of future persecution. If Kllokoqi can demonstrate a fear of future persecution in Kosovo, he is entitled to asylum.

### D.  Humanitarian Relief

Even if the government rebuts a presumption of Kllokoqi's future persecution or if Kllokoqi fails to affirmatively show a well-founded fear of future persecution, the Attorney General can still grant Kllokoqi asylum "as a matter of discretion for humanitarian reasons if the alien has suffered . . . 'atrocious forms of persecution.'" *Asani*, 154 F.3d at 722 (quoting *Matter of Chen*, 20 I. & N. Dec. 16, 19 (BIA 1989)). As the BIA acknowledged in *Chen*, "there may be cases where the favorable exercise of discretion is warranted . . . even if there is little likelihood of future persecution." *Chen*, 20 I. & N. Dec. at 19; *see also Brucaj v. Ashcroft*, 381 F.3d 602, 608 (7th Cir. 2004). The applicant has the burden to "demonstrate[ ] compelling reasons for being unwilling or unable to return . . . arising out of the severity of past persecution." 8 C.F.R. § 1208.13(b)(1)(iii)(A).

Kllokoqi carries a heavier burden in attempting to establish persecution under this method than he would if he could establish a well-founded fear of persecution. *See Bereza*, 115 F.3d 468, 476 (7th Cir. 1997). To qualify for a humanitarian grant of asylum, Kllokoqi must show such severe past persecution that "repatriation would be inhumane." *Id.* at 724. This is a difficult burden indeed, but the IJ should consider this form of relief in light of Kllokoqi's claims of extreme violence while in Kosovo.

### III.  CONCLUSION

For the foregoing reasons, we VACATE the BIA's removal order and REMAND for further proceedings consistent with this opinion.

While the final choice of a presiding judge remains always with the BIA, we strongly encourage the BIA to assign Kllokoqi's case to a different judge on remand in order to avoid any perception of lingering bias. *See Georgis v. Ashcroft*, 328 F.3d 962, 970 (7th Cir. 2003) (citing Circuit Rule 36 of the United States Court of Appeals for the Seventh Circuit, which establishes the same default rule for cases remanded to federal district courts).

A true Copy:

       Teste:

                    _____

                    *Clerk of the United States Court of Appeals for the Seventh Circuit*