UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 14, 2006
Decided October 2, 2006

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 05-3680

| | |
|---|---|
| HUNG CHANG YIANG,<br>    *Petitioner,* | Petition for Review of an Order of the<br>Board of Immigration Appeals |
| *v.* | No. A78 845 619 |
| ALBERTO R. GONZALES,<br>    *Respondent.* | |

**O R D E R**

Hung Chang Yiang claims that he will be persecuted if forced to return to his native China because he is a practitioner of Falun Gong. Yiang petitioned for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). The Immigration Judge found him ineligible for asylum because he filed his application more than a year after entering the United States, *see* 8 U.S.C. § 1158(a)(2)(B), and denied him withholding of removal and relief under the CAT largely because she did not believe that he had practiced Falun Gong. The Board of Immigration Appeals adopted and affirmed the IJ's decision. Yiang now petitions for review of the denial of withholding. Because the IJ's decision is supported by substantial evidence, we deny the petition.

**I.**

Yiang entered the United States with a fraudulent passport at O'Hare International Airport in June 2001. At his airport interview, he told immigration officers that he left his home in Fujian province because he was practicing Falun Gong and was afraid he might be arrested. However, when asked if the Chinese police knew he had "joined" the Falun Gong movement, he said they did not. He also said that he had been practicing Falun Gong for only half a year.

Yiang remained in the custody of the INS (now the United States Citizenship and Immigration Services (USCIS), a bureau of the Department of Homeland Security) for about seventeen days. At the end of this period, he was given a credible-fear interview. His statements during the credible-fear interview were basically consistent with his testimony at the airport interview, but he added claims that his "coworkers were arrested in April 2000," and that he himself experienced difficulty finding employment because of his association with Falun Gong. The interviewer noted at the end of the interview form that "Applicant did not know 5 basic exercises," and that he had explained that "because he was only a member for one year he had not learned a lot."

In October 2002, Yiang filed an application for asylum. In it he claimed that he began to practice Falun Gong in May 1999 after an acute attack of a "stomach problem" that had plagued him since childhood. The pain of that attack was so bad that he fainted and had to be hospitalized. While he was in the hospital, he was visited by several coworkers, one of whom claimed to have alleviated similar stomach problems through practice of Falun Gong. This coworker, Xiaofeng Li, invited Yiang to try the exercises for himself. From then on, said Yiang, he practiced Falun Gong daily with Li at a local senior center, and his stomach problems ceased to bother him.

At first he was able to practice freely, but in July 1999, according to Yiang, the Chinese government banned Falun Gong. Even so, for a time, Yiang and the others in his group continued to practice openly. Two months later Yiang and Li were ordered by their employer to stop practicing. They were warned in November 1999 that they would lose their jobs if they did not stop, but they refused and were fired that December. At the same time, according to Yiang, the government began "repress[ing]" Falun Gong "viciously." Yiang's parents and sister would no longer allow him to go to the practice site because they were afraid for him, and so he had to practice at home. Yiang's friend Li, however, continued to practice at a "secret site" in a park. Sometimes he also went to Yiang's home to practice with him.

In April 2000, Li and several of his fellow Falun Gong practitioners were detained by the police. One of Yiang's cousins who worked at a police station called

to tell him that his friends had been interrogated and beaten. Yiang's cousin was worried that they might report that Yiang was practicing at home and encouraged him to "get away."

Yiang decided to do so. He hid at "a relative's house" while his parents made plans to send him "abroad." With the help of his cousin, he obtained a passport and left China in April 2001. He arrived in Chicago in June 2001, with a false Taiwanese passport, which he claimed he was forced to purchase because he had lost his original passport while traveling through Yugoslavia and Spain en route to the United States.

At his hearing before the IJ, Yiang repeated essentially the same story, but there were a few significant discrepancies. First, he told the IJ that he began to practice Falun Gong in June 1998 rather than in May 1999 (and also, oddly enough, that he was hospitalized for the acute attack of stomach pain in September 1998, three months *after* he allegedly began to practice). Second, Yiang testified that when he was practicing openly, he accompanied Li to practice at a local park; he made no mention of the senior center that figured so prominently in his asylum application. Third, Yiang claimed that Li was arrested in 2001 rather than 2000 as he had claimed in both his credible-fear interview and his asylum application. Finally, Yiang raised a new claim that police had come looking for him at his parents' home three weeks after Li's arrest. (According to Yiang, the police did not find him because he had already gone to hide at his grandmother's house.)

The only evidence Yiang offered to corroborate any of this testimony was a letter from his parents that recited his principal allegations. The letter also asserted that Li remained in custody, and that the police "issued a wanted circular for [Yiang] and actually came to our house several times to look for him." Yiang's parents claimed that they had previously attempted to write letters for him to verify his story but that their letters were "confiscated by the Chinese customs office" because they exposed the "negative side" of the country.

The IJ rejected Yiang's claim that his delay in filing his asylum application for more than a year was excused by "extraordinary circumstances," *see* 8 U.S.C. § 1158(a)(2)(D), and concluded that he was not eligible for asylum. The IJ also denied him withholding of removal and protection under the CAT because she did not believe that he was a practitioner of Falun Gong. She found his testimony incredible because he had testified inconsistently about the date he began to practice, and because he had been unable to describe the five basic movements of Falun Gong at his credible-fear interview. In addition, she thought his claim undermined by his failure to obtain any affidavit or witness testimony from any of the persons with whom he allegedly practiced Falun Gong in Chicago. Finally, she concluded that even if Yiang were credible, he could not have sustained his burden

of proving a clear probability of persecution or torture because he failed to show that his circumstances sufficiently resembled Li's to justify an inference that he would be targeted for similar treatment, and because he failed to point to anything suggesting that the Chinese police sought him at his parents' house in order to punish him for practicing Falun Gong.

The BIA adopted and affirmed the IJ's opinion, making it the final agency determination for purposes of our review. *Giday v. Gonzales*, 434 F.3d 543, 547 (7th Cir. 2006); *Feto v. Gonzales*, 433 F.3d 907, 911 (7th Cir. 2006).

## II.

Persecution of practitioners of Falun Gong has been variously deemed persecution on account of religion, imputed political opinion, and membership in a particular social group, *see Zhou v. Gonzales*, 437 F.3d 860, 863 (9th Cir. 2006) (imputed political opinion); *Chen v. United States Dept. Of Justice*, 426 F.3d 104, 114 (2d Cir. 2005) (religion and social group); *Iao v. Gonzales*, 400 F.3d 530, 534 (7th Cir. 2005) (religion); *Zhang v. Ashcroft*, 388 F.3d 713, 719-20 (9th Cir. 2004) (per curiam) (imputed political opinion and religion), but there is no question that practicing Falun Gong is in one way or another protected. A petitioner for asylum, however, must have a credible claim that he *is* a practitioner, and the IJ found that Yiang was not sufficiently credible.

We review an adverse credibility finding for substantial evidence. *Kllokoqi v. Gonzales*, 439 F.3d 336, 341 (7th Cir. 2005). The IJ's finding is entitled to particular deference, as long as it is supported by "specific, cogent reasons" with a "legitimate nexus to the finding." *Id.* (internal citation and quotation omitted); *see Shtaro v. Gonzales*, 435 F.3d 711, 715 (7th Cir. 2006). To overturn a denial of asylum for lack of credibility requires "extraordinary circumstances."[1] *Huang v. Gonzales*, 453 F.3d 942, 945 (7th Cir. 2006) (internal citation and quotation omitted).

There are no extraordinary circumstances here. Yiang first argues that the IJ's decision is unreasoned, for the reasons we set forth in *Iao*, 400 F.3d at 532-33. Specifically, Yiang contends that the IJ (1) did not make a "clean" credibility determination, (2) erred in discrediting him based on the discrepancies in the dates he gave for beginning his practice, and (3) unreasonably assumed that he could obtain corroborating evidence from his fellow Falun Gong practitioners in Chicago.

---

[1]Our credibility analysis is unaffected by the passage of the REAL ID Act of 2005, *see* Pub. L. No. 109-13, 119 Stat. 231, which governs only cases in which the petition for asylum was filed on or before May 11, 2005. *Kwok v. Gonzales*, 455 F.3d 766, 769 (7th Cir. 2006).

But *Iao* is not an appropriate parallel. In that case we rejected all of the IJ's five reasons for denying the petitioner asylum. Moreover, the IJ's opinion left us "in the dark" as to why, in her view, the petitioner failed to carry her burden of proof. *See Iao*, 400 F.3d at 532-34. In this case it is clear that the IJ did not find Yiang credible because she stated that he failed to convince her "of the bona fides of his membership in this particular social group [Falun Gong practitioners]." In addition, we do not agree with Yiang's claim that the discrepancies in the dates he gave for beginning his practice are too insignificant to support the adverse credibility finding. *See id.* at 532 (criticizing IJ for relying on "trivial" inconsistencies). Discrepancies in date may be trivial, *see, e.g., Kwok*, 455 F.3d at 769-70; *Singh v. Gonzales*, 439 F.3d 1100, 1108-09 (9th Cir. 2006); *Daneshvar v. Ashcroft*, 355 F.3d 615, 623 (6th Cir. 2004), but here the IJ justified giving them weight by noting that, according to Yiang, the date he began to practice Falun Gong marked a turning point in his life. At that time the stomach problems that had plagued him since his childhood ended. And Yiang offered no explanation for giving the differing dates. Further, while the IJ may have been unreasonable in expecting Yiang to produce affidavits or other testimony from his fellow Falun Gong practitioners in Chicago, *see Iao*, 400 F.3d at 534, we do not think such an error would warrant reversal because of the strength of the other grounds for the IJ's determination.

Yiang next argues that the IJ erred in discrediting him because of his inability to explain the five basic exercises of Falun Gong at his airport interview. These exercises are critical because, as we noted in *Iao*, they are "the primary manifestation of adherence to Falun Gong," and "the heart" of its observance. *See Iao*, 400 F.3d at 531-32. Yiang does not dispute this, but he contends that under our opinion in *Balogun v. Ashcroft*, 374 F.3d 492, 505 (7th Cir. 2004), the record of the interview is unreliable because it "merely summarize[d] or paraphrase[d]" what transpired and did not contain the exact words of the question he was asked about the five exercises. We disagree. *Balogun* did not establish a categorical prohibition against reliance on such a record; we simply cautioned that a summary record is generally "less reliable." *Id.* And in this case the record contains an approximation of the question Yiang was asked and the answer he gave, such that we are satisfied that the record is a meaningful report of the exchange. In any event, Yiang has no basis for arguing that the record is unreliable because he does not dispute the accuracy of its representations. *See id.*

We uphold the IJ's adverse credibility determination, and the petition for review is DENIED.