In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 05-2755

YLLI SINA,

*Petitioner,*

*v.*

ALBERTO R. GONZALES,

*Respondent.*

---

On Petition for Review of an Order
of the Board of Immigration Appeals.
Case No. A77-455-854

---

ARGUED JANUARY 17, 2007—DECIDED FEBRUARY 7, 2007

---

Before FLAUM, KANNE, and EVANS, *Circuit Judges.*

KANNE, *Circuit Judge.* Ylli Sina brings a petition for review of the Board of Immigration Appeals' ("BIA") order affirming the Immigration Judge's ("IJ") decision denying his application for asylum and ordering his removal. He argues that the IJ's adverse credibility determination lacked substantial evidence and that substantial evidence supported his claim of persecution. We deny the petition for review.

## I. HISTORY

Sina, a native and citizen of Albania, testified to the following before the IJ. He was a member of the Demo-

cratic Party of Albania from 1992 through October 1998. His membership in the Democratic Party and family connections resulted in a position as driver and assistant to Judge Agim Bendo from 1994 through 1996. His work for Judge Bendo included picking up the judge in the morning for work, attending meetings, and assisting the judge with his paperwork and files. In 1994, Judge Bendo found Fatos Nano, a former Prime Minister of Albania, guilty of corruption and sentenced Nano to thirteen years' imprisonment. Sina witnessed the Nano trial.

The Socialist Party in Albania won elections in 1997 resulting in Nano being released from prison and returning to political power. Nano attempted to have the Albanian courts overturn his prior conviction. Sina claims that beginning in June 1997, he was approached by two men who asked him to go before an Albanian court on behalf of Nano and declare that Nano's conviction had been politically motivated. Sina believed that he was being targeted by Nano's supporters because he had been close to Judge Bendo and was a trustworthy member of the Democratic Party. The men wore civilian clothing and did not show official identification but Sina believed that they were police officers due to the fact that their vehicle had official license plates. He refused to cooperate with the two men and the men responded by threatening that he would lose his job. The two men returned a second time in an attempt to persuade Sina to cooperate but again he refused.

Sina testified that he was physically attacked by police when he attended a Democratic Party rally of approximately 30,000 people in August 1998. He spent one week in the hospital recovering from the beating. The two men came to the hospital threatening that he would be detained or killed if he did not go to court on behalf of Nano. Sina was fired from his job in October 1998, and the two men again appeared trying to pressure Sina to cooperate. At

this point, Sina went into hiding in Albania and then he came to the United States on December 31, 1998. Sina believes that he will be killed if he returns to Albania. His father was killed while riding on a motorcycle but the case is still open in Albania. Nano was pardoned in 1999 but Sina believes that he would still be in danger because of his previous refusals to cooperate.

Sina provided documents attesting to his membership in the Democratic Party and his employment for Judge Bendo and newspaper articles to support his testimony. The IJ sought to verify the authenticity of Sina's documents from the United States Embassy in Albania. The embassy reported that the documents were fraudulent. The IJ also determined that the newspaper accounts contradicted Sina's testimony. Sina tried to explain that it was difficult to obtain proper documents and also tried to bolster his story with additional witnesses. The IJ rejected Sina's explanation for the discrepancies in his documents finding his claim to be unconvincing and not credible and rejected his application. The BIA adopted the IJ's decision with remarks supporting the IJ's decision. Sina argues before us that (1) the IJ's adverse credibility determination lacked substantive evidence, and (2) substantial evidence supports his claims of persecution.

## II. ANALYSIS

"When the BIA adopts the IJ's decision while supplementing the decision with its own reasoning, the IJ's decision, as supplemented by the BIA's decision, becomes the basis for review." *Gjerazi v. Gonzales,* 435 F.3d 800, 807 (7th Cir. 2006) (citing *Niam v. Ashcroft,* 354 F.3d 652, 655-56 (7th Cir. 2004)). We must uphold the BIA's denial of relief as long as it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Margos v. Gonzales*, 443 F.3d 593, 597 (7th Cir.

2006) (quoting *Koval v. Gonzales*, 418 F.3d 798, 804 (7th Cir. 2005)). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). We perform a highly deferential review of the IJ's credibility determination in which we "look for substantial evidence" and "specific, cogent reasons that bear a legitimate nexus to the IJ's finding." *Doumbia v. Gonzales*, 472 F.3d 957, 963 (7th Cir. 2007) (citing *Ayi v. Gonzales*, 460 F.3d 876, 880 (7th Cir. 2006); *Georgis v. Ashcroft*, 328 F.3d 962, 968 (7th Cir. 2003)).

"In order to succeed on [a] claim for asylum, [the petitioner] must demonstrate that he is unable or unwilling to return to his country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Bejko v. Gonzales*, 468 F.3d 482, 484 (7th Cir. 2006) (citing 8 U.S.C. § 1101(a)(42)(A); *Hanaj v. Gonzales*, 446 F.3d 694, 698 (7th Cir. 2006)). "The applicant bears the burden of proving that he is eligible for asylum." *Hernandez-Baena v. Gonzales*, 417 F.3d 720, 723 (7th Cir. 2005) (citing *Jamal-Daoud v. Gonzales*, 403 F.3d 918, 922 (7th Cir. 2005); 8 C.F.R. § 208.13(a)). "If the IJ finds the [applicant's] testimony to be incredible, then a convincing explanation of the discrepancies or extrinsic—and credible—corroborating evidence is required. Without such an explanation or corroboration . . . the applicant cannot meet his burden of proof and his asylum claim will fail." *Capric v. Ashcroft*, 355 F.3d 1075, 1086 (7th Cir. 2004) (internal citations and quotations omitted).

We agree that the IJ properly concluded that Sina was not credible. The evidence supporting this conclusion includes the submission of false documents, inconsistencies between Sina's testimony and the Embassy Re-

port, inconsistencies between Sina's testimony and the newspaper articles tendered by Sina to support his claims, inconsistencies between Sina's asylum declaration and his testimony and Sina's inability to provide corroborating evidence after his credibility was questioned. The IJ supported her credibility determination with "specific, cogent reasons that bore a legitimate nexus to that finding" and therefore we must affirm the decision of the IJ. *Balogun v. Ashcroft*, 374 F.3d 492, 508 (7th Cir. 2004).[1]

## III.  CONCLUSION

We DENY the petition for review.

A true Copy:

       Teste:

                           _____
                           *Clerk of the United States Court of Appeals for the Seventh Circuit*

---

[1] The IJ also considered Sina's claims for asylum and relief under the Convention Against Torture, assuming arguendo, that he was credible. We agree with the IJ's determination that Sina would be unable to demonstrate an entitlement to relief even if he had been found credible. However, as we are agreeing that the IJ properly found Sina to be incredible, we need not discuss this issue further.