NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 10, 2007
Decided July 25, 2007

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. RICHARD D. CUDAHY, *Circuit Judge*

Hon. KENNETH F. RIPPLE, *Circuit Judge*

No. 06-3243

| | |
|---|---|
| SHAMIN A. HAROON, *et al.*<br>    *Petitioner,* | Petition for Review of an Order of<br>the Board of Immigration Appeals |
| *v.* | Nos.  A73-611-287; |
| | A73-645-141; |
| ALBERTO R. GONZALES, | A73-645-142; |
|    *Respondent.* | A73-611-256 |

## O R D E R

Shamin Haroon and his family entered the United States from Pakistan in 1994 as non-immigrant visitors.  The Haroons requested asylum, withholding of removal, and relief under the Convention Against Torture (CAT), claiming they would be persecuted if returned to Pakistan because of Shamin's involvement in a political group called the Muttahida Quami Movement (MQM).  The Immigration Judge found Shamin not credible and denied the requested relief.  The Haroons appealed, but the Board of Immigration Appeals adopted and affirmed the IJ's decision.  The Haroons now petition for review, contesting the IJ's credibility determination and arguing that they established an objectively reasonable fear of future persecution.  Because the petitioners have not demonstrated that they will be singled out for persecution if returned to Pakistan, we deny the petition.

The petitioners first applied for asylum in 1994, about a week after arriving in the United States from Pakistan. Shamin testified at the asylum hearing that he did not sign the application, that someone who "worked in a law firm" filled it out for him, and that he "didn't agree" with many of the answers. The application states that Pakistanis considered the Haroons Mohajirs[1]—literally immigrants—because of their Indian origins, and that Shamin was therefore arrested and attacked by the police.

A statement attached to the application recounts that in 1985 Shamin joined a nascent political party in the city of Karachi, the MQM, which lobbied for equal rights for Mohajirs. According to the statement, he eventually became the leader of the group's local chapter and in 1988 was targeted for "elimination" by a rival political party called the Pakistan People's Party (PPP). Shamin's house was subsequently ransacked twice and the police refused to help him. The statement also states that Shamin was arrested and detained for three days in 1991 and again in 1993 and that Shamin's younger brother was arrested and tortured for being a member of the MQM.

In 2002 the Haroons updated their application. They introduced a new statement from Shamin that omitted nearly every major incident on which his earlier application relied. Notably, he wrote that he escaped attacks from the PPP because, beginning in 1985, he and his family spent most of their time in Saudi Arabia.

Shamin was the only witness at his asylum hearing in May 2005. He testified that beginning in 1976 he traveled "back and forth" between Saudi Arabia and Pakistan, but after the PPP came to power in 1985 he feared the resulting political unrest. He said that he and his wife decided to move to Saudi Arabia for ten years, during which time he returned to Pakistan for only one week in 1985 and again in 1990. Shamin also described his involvement with the MQM as trying "to get voters" on college campuses. He said he had "some problems" due to his membership in MQM, namely that "sometime in 1991," members of the PPP arrested him and threatened him and his family. He acknowledged, however, that his mother and sister still lived in Pakistan, and that no one else in his family ever had any problems because of his political affiliations.

---

[1] Mohajirs in Pakistan are immigrants (and their decedents) who immigrated from India when the two countries were partitioned by the British following World War II. CIA World Factbook, https://www.cia.gov/library/ publications/the-world-factbook/geos/pk.html#People; U.S. Dep't of State, Bureau of South and Central Asian Affairs, Background Note: Pakistan (May 2007), at http://www.state.gov/r/pa/ei/bgn/3453.htm.

The IJ denied the Haroons' request for asylum, withholding of removal, and relief under CAT. The IJ ruled that Shamin was not credible because his testimony had been "impeached by his own documents and his own testimony." Given Shamin's acknowledgment that he lived in Saudi Arabia for ten years before moving to the United States, the IJ pointed out that none of the incidents described in the earlier application could have occurred because the Haroons did not even live in Pakistan. The IJ also ruled, without explanation, that the Haroons had not established past persecution. Finally, the IJ ruled that Shamin did not demonstrate an objectively reasonable fear of future persecution because he continued to travel back to Pakistan while he lived in Saudi Arabia. The IJ added that Shamin still had family in Pakistan whom the government left alone, that the State Department's country report indicated that conflicts involving the MQM were generally limited to a specific Pakistani province which the Haroons could avoid, and that the PPP was no longer in power. The Haroons appealed the IJ's decision to the BIA, which adopted the IJ's decision in a short order.

In their petition for review, the Haroons primarily challenge the IJ's adverse credibility determination because they contend that Shamin's testimony was consistent with the supporting documents. They also argue that any inconsistencies were not relevant to their claim that Shamin was targeted for persecution because of his political affiliation.

We review an IJ's adverse credibility determination deferentially, *Sina v. Gonzales*, 476 F.3d 459, 461 (7th Cir. 2007), and will overturn the decision only under extraordinary circumstances, *Oforji v. Ashcroft*, 354 F.3d 609, 613 (7th Cir. 2003). An IJ's adverse credibility determination must be supported by "specific, cogent reasons" that "bear a legitimate nexus to the finding." *Gjerazi v. Gonzales*, 435 F.3d 800, 807 (7th Cir. 2006) (citations and quotations omitted).

The IJ's adverse credibility determination is adequately supported by the record. In finding Shamin not credible, the IJ permissibly relied on multiple inconsistencies between Shamin's written and oral statements, *see Olowo v. Ashcroft*, 368 F.3d 692, 699 (7th Cir. 2004), and all of these inconsistences go to the heart of the Haroons' claims, *Adekpe v. Gonzales*, 480 F.3d 525, 530 (7th Cir. 2007). For instance, Shamin presented conflicting evidence about his whereabouts between 1984 and 1994. In his application, Shamin wrote that by 1986 he was in charge of the local chapter of the MQM in Pakistan, yet at his hearing he testified that he spent most of the decade in Saudi Arabia—not Pakistan. Shamin also presented conflicting evidence about the extent of his involvement in the MQM. While he wrote in his application that he was in charge of the local MQM chapter, he testified that he only supported MQM by helping to register voters. Finally, in his application Shamin recounted that his house had been attacked and ransacked

twice, that his brother had been tortured, and that he was arrested in 1993, yet he did not mention any of these events at his hearing.

Shamin tried to explain these inconsistencies by testifying that he did not write or approve the first application and that he tried to correct it before an asylum officer. The IJ did not credit this testimony, however, because Shamin did not correct the application before the hearing and Shamin could not corroborate his assertion that he spoke to an asylum officer about the problem. But even if Shamin were credible, the Haroons' counsel acknowledged at oral argument that the event to which Shamin testified "admittedly doesn't rise to the level of past persecution."

Further, the IJ's conclusion that Shamin does not have an objectively reasonable fear of future persecution is supported by substantial evidence. Without evidence of past persecution, Shamin had to demonstrate that he genuinely fears persecution on account of his involvement in the MQM and that his fear is objectively reasonable. *See Boci v. Gonzales*, 473 F.3d 762, 767 (7th Cir. 2007). "The petitioner's allegations, if true, describe general social strife in Pakistan, which relates to, but are not necessarily the result of any of the [statutory] grounds" that would entitle them to asylum. *Akhtar v. Gonzales*, 406 F.3d 399, 405 (6th Cir. 2005) (internal citations and quotation marks omitted); *see also Hor v. Gonzales*, 400 F.3d 482, 486 (7th Cir. 2005) (holding that even civil wars do not require immigration officials to grant asylum to either side's supporters). While the situation in Pakistan may be extremely dangerous, the Haroons have not provided the requisite specific, detailed facts showing that they have good reason to fear that they will be singled out for persecution. *See Ahmed v. Ashcroft*, 348 F.3d 611, 618 (7th Cir. 2003).

Because the petitioners have not satisfied their burden of proving their eligibility for asylum, they cannot meet the more demanding standard for withholding of removal or for relief under CAT. 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16(b); *Prela*, 394 F.3d at 519; *Hasanaj v. Ashcroft*, 385 F.3d 780, 783 (7th Cir. 2004); *Ahmed*, 348 F.3d at 615.

Accordingly, we DENY the petition for review.