**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued June 10, 2008
Decided June 27, 2008

**Before**

RICHARD A. POSNER, *Circuit Judge*

JOHN L. COFFEY, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

No.  07-2939

| | |
|---|---|
| ZONG XIU OU YANG, *Petitioner*, | Petition for Review of an Order of the Board of Immigration Appeals. |
| *v.* | |
| MICHAEL B. MUKASEY, Attorney General of the United States, *Respondent*. | No. A96-421-414 |

**O R D E R**

Facing removal proceedings after he illegally crossed the Canadian border, Zong Xiu Ou Yang applied for asylum, withholding of removal, and relief under the Convention Against Torture, claiming that he fears arrest and torture in his native China for his participation in a religious group.  The immigration judge ("IJ") denied all forms of relief, finding Ou Yang not credible based on inconsistencies between his testimony at the removal hearing and his written application for relief.  The Board of Immigration Appeals ("BIA") upheld the IJ's decision, and Ou Yang petitions for review.  Because the IJ's adverse

credibility finding is supported by substantial evidence, we deny the petition for review.

## Background

At an initial hearing on July 14, 2004, Ou Yang, who was then nineteen years old, presented his application for relief.  In that application, he stated that he sought asylum on account of his participation in what he characterized as the religious group known as Iron Fan.  Ou Yang reported that, because he has been a member of Iron Fan since May 2003, he was placed on a Chinese government "black list," and that Chinese police had pursued him on two occasions.  Ou Yang stated that other members of Iron Fan had been arrested, imprisoned, and tortured because of their religious beliefs and that, even though he no longer practiced Iron Fan, he feared he would meet the same fate should he return to China.  He also asserted that he had never been arrested or detained in a country other than the United States.  Ou Yang's attorney, who like Ou Yang speaks Mandarin, assisted him in translating, preparing and filing his application.  Ou Yang did not, however, submit a narrative statement in support of his application.

The IJ granted an 18-month continuance to permit Ou Yang to gather evidence in support of his claim, although he ultimately supplied no evidence beyond his own testimony.  On January 6, 2006, the IJ held a final removal hearing.  Before Ou Yang testified, his attorney told the IJ that, contrary to Ou Yang's statements in his written asylum application, Ou Yang now intended to testify that Chinese police had detained and tortured him for two days in 2003.  The IJ observed that Ou Yang's attorney had presumably done "a thorough job" in preparing the application and warned Ou Yang that the contradiction between his written application and his testimony would call his credibility into question.

Ou Yang proceeded to testify and told the IJ that he left China illegally because he was a member of Iron Fan.  Iron Fan, according to Ou Yang, is both a religious organization and a political group critical of communism and the Chinese government.  Ou Yang explained that Iron Fan is "against anything that's unfair to the people" and that its guiding principle is to "resolve right away" all "unfair behaviors in the world."  Ou Yang stated that Iron Fan is a local group found only in Fujian Province and his attorney conceded that he had been unable to find any mention of Iron Fan in the Department of State's official reports on China.

Ou Yang next described his involvement with Iron Fan.  Although he stated in his asylum application that he had joined the group in May 2003, he testified that he had practiced Iron Fan since May 30, 2002, the day it was founded.  That same day he attended a

large Iron Fan gathering where the religion's founder, "Lin," criticized the Chinese government's persecution of a different religious group, Falun Gong, and denounced the government's attempts to control religious practice. The local police broke up the gathering and arrested numerous attendees, though Ou Yang stated that he fled to avoid arrest. Ou Yang did not have any documentation of his Iron Fan participation, although he said that he formally joined the group by signing his name to a list of those who had attended the May 30 gathering.

After that gathering, Ou Yang's parents, worried about his safety, moved Ou Yang from their house to his aunt's home, where he stayed for over one month. Upon returning to his parents' home in July 2002, he learned that the Iron Fan leader had been arrested, but nonetheless he continued to attend Iron Fan classes once a week. Ou Yang testified that he also participated in three more Iron Fan gatherings, which he described as "a lot of people [who] would demonstrate in front of a government facility." At a gathering on May 20, 2003, Chinese police allegedly arrested Ou Yang and ten more of the Iron Fan practitioners who were protesting the Chinese government's over-taxing of farmers. According to Ou Yang, the officers took him to a police station approximately one hour away, where they severely beat him and held him for two days. Ou Yang's parents posted bail, and Ou Yang was permitted to leave police custody so long as he agreed to report to the police station in his town every week. Ou Yang testified that the police did not provide him with any documentation of his detention or give his parents a receipt for the bail they had posted. Ou Yang also explained that he did not mention the arrest, detention, and beating in his asylum application because he "forgot" to tell his attorney and only remembered to reveal that information later.

Ou Yang testified that after his release from jail his parents took him to a hospital where a doctor told him that his injuries were mainly internal. Ou Yang explained that the police had placed a book against him "as a cover" and then beat him through the book to avoid leaving external bruises. Ou Yang also stated that the police had handcuffed him to a pole and taken turns beating him, first with a book, and then with closed fists when he still refused to end his involvement with Iron Fan. Ou Yang admitted that while he was bruised and had swollen eyes resulting from the beating, he suffered no internal or external bleeding nor did he incur any organ damage. Ou Yang claimed that the hospital refused to provide him with records of his treatment because the doctor knew his injuries were caused by the police.

After that, Ou Yang said, he reported weekly to the police as required, and during those visits the police examined him to assess whether his injuries had healed sufficiently in order that he could appear in court to face criminal charges. Ou Yang maintained that the

police had placed his name on a "black list" composed of people who attended the inaugural Iron Fan gathering in May 2002 and that Chinese officials had issued warrants for the arrest of everyone on the "black list." Ou Yang explained that, although this list was compiled in May 2002, he had managed to avoid arrest until 2003 because he was in hiding when the police came to his village to make arrests in 2002.

Ou Yang further explained that his parents had agreed to pay $40,000 to smuggle him to the United States after he learned that a friend and fellow member of Iron Fan had been arrested and sentenced to twenty years in prison. Ou Yang left China on July 15, 2003, and arrived in the United States about two months later. The petitioner testified that he fears he will be beaten and imprisoned like other Iron Fan practitioners if he is forced to return to China. Ou Yang also testified, however, that he believes Iron Fan no longer exists. Ou Yang submitted no documentary evidence in support of his claim save for his Chinese birth certificate.

After hearing testimony and reviewing the sparse documentary record, the IJ concluded that Ou Yang was not credible and denied relief. The IJ observed that Ou Yang's testimony regarding his detention and beating by Chinese police was inconsistent with his written application, and noted that he has failed to explain those inconsistencies. The IJ also noted that, although Ou Yang had over a year between filing his application and his final removal hearing to gather evidence, he had provided virtually no evidence to corroborate his testimony. The IJ bolstered his adverse credibility determination by pointing to several discrepancies in Ou Yang's testimony compared to his application. For instance, although Ou Yang stated in his application that he joined Iron Fan in May 2003, he then testified that he joined the religion in May 2002 and that the 2003 date was a typographical error. More importantly, Ou Yang omitted entirely from his written application the key event in his testimony—that he was purportedly arrested, detained, and beaten by Chinese police—and rather with his lawyer's assistance checked a box on his application stating that he had *never* been arrested or detained.

The IJ next ruled that, even if Ou Yang's testimony regarding his detention was credible, the mistreatment he described did not rise to the level of persecution because he was detained only briefly and not seriously injured. The IJ also noted that Ou Yang had not shown that he was detained and beaten because of his religion. Moreover, the IJ concluded that Ou Yang had not established an objectively reasonable fear of future persecution because he failed to corroborate his speculation that Chinese police had issued a warrant for his arrest or that if he returned he would face criminal charges for his participation in Iron Fan demonstrations. The IJ therefore denied Ou Yang's applications for relief and ordered him removed to China.

The BIA dismissed Yang's appeal in a single-member decision. The BIA upheld the IJ's adverse credibility determination, highlighting the discrepancies between Ou Yang's written application and his hearing testimony. The BIA also concluded that Ou Yang had not provided sufficient corroboration of his claim to overcome the significant inconsistencies in his testimony and therefore dismissed his appeal.

**Analysis**

Ou Yang argues that the IJ's adverse credibility finding is not supported by substantial evidence. He maintains that he simply omitted from his written application some facts drawn out in his testimony, that omissions are not the same as inconsistencies, and that he adequately explained any remaining discrepancies. Ou Yang also contends that the IJ erred in weighing the contents of his application as evidence and in grounding his decision on the dearth of documentary evidence to corroborate petitioner's testimony. Finally, Ou Yang argues that the IJ should have found that Ou Yang's reports of beatings rose to the level of persecution.

Where, as here, the BIA has dismissed an appeal in a single-member decision, *see* 8 C.F.R. § 1003.1(e)(5), we review both the IJ's decision and any supplemental reasoning of the BIA. *Gutnik v. Gonzales*, 469 F.3d 683, 685 (7th Cir. 2006). We will uphold the IJ's decision so long as it is supported by substantial evidence, and will overturn it "only if the record compels a contrary result." *Mema v. Gonzales*, 474 F.3d 412, 416 (7th Cir. 2007). An IJ's credibility determination must be supported by "'specific, cogent reasons that bear a legitimate nexus to the finding.'" *Feto v. Gonzales*, 433 F.3d 907, 911 (7th Cir. 2006) (quoting *Jamal-Daoud v. Gonzales*, 403 F.3d 918, 922 (7th Cir. 2005)). Although immaterial discrepancies in an asylum applicant's testimony cannot support an adverse credibility finding, *see Adepke v. Gonzales*, 480 F.3d 525, 530-31 (7th Cir. 2007), we will not overturn an IJ's credibility determination simply because the evidence might support an alternate finding, *Kllokoqi v. Gonzales*, 439 F.3d 336, 341 (7th Cir. 2005). Credibility determinations should be disturbed, therefore, only under "'extraordinary circumstances.'" *Song Wang v. Keisler*, 505 F.3d 615, 621 (7th Cir. 2007) (quoting *Shmyhelskyy v. Gonzales,* 477 F.3d 474, 479 (7th Cir. 2007)).[1]

In order to have established his claim for asylum, Ou Yang bore the burden of proving that he cannot return to China based on a well-founded fear of persecution on

---

[1]Because Ou Yang filed his application for relief on July 14, 2004, our credibility analysis is unaffected by the new standard of review for credibility determinations applied to claims for asylum made after May 11, 2005. *See* 8 U.S.C. § 1158(b)(1)(B)(iii); *Mitondo v. Mukasey*, 523 F.3d 784, 787-88 (7th Cir. 2008).

account of his religion.  *See Soumare v. Mukasey*, 525 F.3d 547, 552 (7th Cir. 2008).  If petitioner Yang did not meet his burden of proof for his asylum claim, then it necessarily follows that he did not make the more-stringent showings required to succeed on his requests for withholding of removal and relief under the Convention Against Torture.  *See Shmyhelskyy v. Gonzales*, 477 F.3d 474, 481-82 (7th Cir. 2007).

The petitioner first contests the IJ's assessment of his credibility.  He quibbles with the IJ's finding that his credibility was undermined by the discrepancy between his application and his testimony regarding the precise date on which he joined Iron Fan.  But Ou Yang has not explained why the crux of the IJ's credibility determination—that in his written application he stated he had never been arrested, while at the hearing he described in detail his arrest by Chinese police—is wrong.  *See Shmyhelskyy*, 477 F.3d at 481 (upholding IJ's adverse credibility determination where applicant testified in great detail about beating while in detention but made no mention of beating in asylum application); *Korniejew v. Ashcroft*, 371 F.3d 377, 386 (7th Cir. 2004) (upholding adverse credibility determination where petitioner described kidnaping in asylum application but "forgot" to mention it at hearing).  Ou Yang's only attempt to resolve this contradiction misrepresents the record by ignoring altogether his application statement that he had never been arrested and instead treating the discrepancy as a mere omission.  Ou Yang also contends that the IJ improperly relied on the written application as evidence, but IJs routinely assess credibility by comparing hearing testimony to applications for relief.  *See, e.g, Soumare*, 525 F.3d at 552-53; *Song Wang*, 505 F.3d at 621; *Capric v. Ashcroft*, 355 F.3d 1075, 1090-91 (7th Cir. 2004).  The IJ reasonably found that Ou Yang's explanation for his inconsistent testimony—that before he filed his asylum application he simply forgot to tell his attorney that he had been detained and tortured by Chinese police for two days—was "hardly believable," and the adverse credibility determination is therefore supported by substantial evidence.  *Capric*, 355 F.3d at 1091.

Ou Yang also claims that the IJ erred in requiring additional evidence to corroborate his testimony.  Although Ou Yang correctly observes that a lack of documentary evidence is not alone a sufficient basis for rejecting an alien's asylum application, *see Lin v. Ashcroft*, 385 F.3d 748, 756 (7th Cir. 2004), we have routinely held that corroborating evidence is "essential" where an alien's testimony is otherwise not credible.  *Uwase v. Ashcroft*, 349 F.3d 1039, 1041 (7th Cir. 2003); *see also Soumare*, 525 F.3d at 553; *Eke v. Mukasey*, 512 F.3d 372, 381 (7th Cir. 2008).  Because Ou Yang's testimony was not credible and he failed to provide a convincing explanation for the discrepancies between his testimony and his asylum application, he needed to supply evidence corroborating his testimony in order to carry his burden of proof.  *See Aung v. Gonzales*, 495 F.3d 742, 746 (7th Cir. 2007); *Sina v. Gonzales*, 476 F.3d 459, 462 (7th Cir. 2007).  Ou Yang, though, did not present any corroborating evidence

at all aside from an irrelevant Chinese birth certificate.  The IJ noted that it was reasonable to expect Ou Yang to provide some documentation, such as Iron Fan membership papers, a record of his arrest, a bail receipt, medical records, an arrest warrant, or affidavits attesting to Iron Fan's existence and Ou Yang's arrest.  Although Ou Yang attempted to offer justifications for why he could not obtain some of these documents, he fails to explain why he could not have at least submitted affidavits from his parents or other members of Iron Fan.  His failure to present any corroborative evidence at all cannot satisfy "the high bar necessary to surmount an adverse credibility decision." *Shmyhelskyy*, 477 F.3d at 481.

## Conclusion

Because the IJ's adverse credibility determination is on its own sufficient to doom Ou Yang's petition, we need not address his argument that he would likely face persecution if he returned to China.  We therefore deny his petition.